# WHEELING.

WOODDELL, ADM'R. *v.* BRUFFY'S HEIRS *et als.*

Submitted January 17, 1885.—Decided March 28, 1885.

1. An estate is committed to a sheriff for administration and before the order of committal an execution in favor of the estate comes to his hands, which he levies and returns not sold for the want of bidders. HELD :

The sureties of his official bond at the time of the levy of such execution are liable, although he may have given a new bond as sheriff before the money was collected or lost by his neglect. (p. 469.)

2. A party who concerts, or unites with a fiduciary in any act contrary to the duty of such fiduciary, becomes *particeps criminis* and will be held liable accordingly.   (p. 470.)

3. An insolvent fiduciary can not impose a liability upon his sureties by the mere giving of a receipt for assets which he does not in fact receive—to do so he must receive substantial assets.   (p 470.)

The facts of the case arc fully stated in the opinion of the Court.

*W. Skeen* for appellants.

*R. S. Turk* for appellees McNeil and Sharp.

*R. L. Parish* for appellee McCallister.

SNYDER, JUDGE:

Patrick Bruffy died in 1853, leaving a will by which he directed his excutor to sell his " Gillespie" lands at public auction.   At the March term 1853 of the county court of Pocahontas county, D. W. Kerr qualified as such executor, and in March, 1854, sold said lands and for the deferred payments took two bonds from James A. Ervine the purchaser, for $282.50 each.

On March 3, 1857, Kerr was by an order of said county court removed as executor and on the same day the estate of said Bruffy was committed by said court to J. S. Wooddell, sheriff, as administrator *de bonis non* with the will annexed. On the official bond of said Wooddell at the time the said estate was committed to him, William Skeen, Francis Dever and others were his sureties.

Upon a rule taken by said Skeen, the said Wooddell was required to give a new bond as sheriff which he did on July 6, 1858, and this bond was on that day accepted by said court. On this new bond Isaac McNeel, J. W. Sharp and others were sureties, and neither the said Skeen nor said Dever was on it.

In March, 1860, the said Wooddell as such administrator filed his bill in the circuit court of Pocahontas county against said Kerr, the former executor, and the legatees of said Bruffy, to have the will construed, the debts ascertained and the administration accounts upon the estate of said Bruffy settled.

Various orders of reference were made, none of which appear to have been executed until August 22, 1875, when a report was filed which was excepted to and recommitted, and a second report was made on February 11, 1876, showing that the plaintiff as administrator was indebted to the estate as of May 1, 1876, in the sum of $1,295.92. This report was confirmed without exception by a decree of the court entered May 4, 1876. By the same decree the plaintiff was ordered to pay said sum to William M. McCallister as special receiver of the court with authority to said receiver to collect the sum by execution and reserving leave to him to proceed against the sureties of the plaintiff, as sheriff, by notice.

The said McCallister as special receiver, on May 2, 1877, by leave of the court, filed two seperate petitions in the cause, the one against the sureties of the plaintiff in his first and the other against his sureties in his second official bond as sheriff, averring in each that execution had issued against the plaintiff for said debt and had been returned " no property found," and prayed for a decree against the said sureties for said $1,295.92 with interest and costs.

The said Skeen demurred and the said Dever answered the first of said petitions, and the said McNeel, Sharp and others filed their joint answer to the second of said petitions, to which answers the plaintiff replied generally. At the October term, 1878, the court overruled the demurrer of said Skeen and immediately thereupon entered a decree against said Skeen, Dever and others, sureties of the plaintiff in said first bond, for the said $1,295.92 with interest and costs. From this decree the defendants Skeen and Dever, appealed.

The appellant, Skeen, insists that the court erred in decreeing against him without taking a rule or giving him time to answer after overruling his demurrer.

It is the settled law of this State that, under the provisions of section 30, chapter 125 of the Code, it is error for which the decree will be reversed to enter a decree on the merits against a party upon overruling his demurrer to a bill without his having answered or a rule given upon him to answer. *Nichols* v. *Nichols*, 8 W. Va. 174; *Pecks* v. *Chambers*, Id. 210.

The petition here demurred to is the only pleading by which this appellant was made a party to the suit or which

contains any allegations against him. It has as to him and the others made parties by it the effect of a bill and his demurrer to it, and the overruling of it must of necessity be treated in the same manner as if it had been a demurrer to a bill in equity. It is clear, therefore, that the court committed a fatal error in decreeing against the appellant, Skeen before he had answered or taking a rule upon him to answer. The demurrer was, however, properly overruled. *Dabney* v. *Smith*, 5 Leigh 13.

It is further insisted, that the court erred in decreeing against the appellants and their co-sureties in the first official bond of the plaintiff for the said sum of $1,295.92. The solution of this assignment of error brings under review the merits of the cause. The record discloses the facts in a very scattered and fragmentary manner, and some facts which might affect the result do not appear to have been even brought into the cause. It is apparent, however, that the above debt of $1,295.92 has its origin in the two bonds taken for the deferred payments of the " Gillespie " lands heretofore mentioned. The facts, so far as I can gather them from the record, seem to be as follows : Before the removal of Kerr as executor of Bruffy he obtained a judgment on the first of said bonds against James A. and E. Ervine, upon which execution issued and went into the hands of the plaintiff Wooddell as sheriff in the latter part of the year 1856. Wooddell as sheriff made this return thereon : " Ex. Feb. 23, 1857, for $64.55, (bal. $150.00,) com's. $62.94, cr. on ex. ; also cr. Mar. 1, 1857, for $80.00, $2.00, com's. $78.00 ; cr. ex. as per receipt ; money received of B. F. Jackson ; wagon held and sold by virtue of older execution ; the horses not forthcoming ; the other property not sold for want of bidders." The amount of this execution is one of the two items which make up the sum decreed against the appellants and others. The other item grows out of the second of said " Gillespie " land bonds which it seems came into the hands of the plaintiff as administrator *de bonis non* after the removal of Kerr as executor of Bruffy. It appears that said " Gillespie " lands were resold by commissioner, S. H. Clark, for the payment of said land, but in what suit or by what authority does not appear. The sale was on January 24, 1868, and W. J.

Wooddell became the purchaser.   Afterwards a receipt dated June 11, 1872, for $539.17, the amount of the proceeds of said sale, was given by the plaintiff as administrator of Bruffy to commissioner Clark, but no money was in fact paid to the plaintiff on account of said proceeds, the transaction was simply an exchange of papers in this manner: W. J. Wooddell being indebted to commissioner Clark for said land and the plaintiff being indebted to said W. J. Wooddell, he gave the said receipt to Clark and thus the cross-demands among the parties were settled.

It seems to me that these facts clearly show a liability on the appellants and their co-sureties in the first bond for the amount of the aforesaid execution against the Ervines. It went into the hands of the plaintiff as sheriff, was levied, part of it collected and returned more than a year before the second bond was given. The return showing that it had been levied, the sureties on the bond at the date of the levy are liable although a *vinditioni expenas* may have subsequently issued and the money been collected after the second had been given.—*Tyree* v. *Wilson*, 9 Grat. 59; *Tyree* v. *Donnally*, *Id.* 64.

And it seems to me to be just as plain that the said first set of sureties are not liable for the proceeds of the sale of the lands made by commissioner Clark. There is not a particle of evidence or even a claim in the record that there was any default or liability on the plaintiff on account of this debt until the receipt was given by him to commissioner Clark on June 11, 1872. It is apparent that facts exist other than those now in the record which may effect the result of the suit as to said proceeds, and as the cause must be remanded I do not deem it proper to decide definitely upon whom the liability for said second sale bond of the Gillespie lands should fall. In the present state of the record it could not fall upon either set of the sureties of the plaintiff as sheriff. By the sale of the land Kerr, the executor, converted the land into money or bonds due to himself and thereby such money or bonds became administered assets and could not legally pass into the hands of the plaintiff as administrator *de bonis non* of Bruffy.—*Estill and Eakle* v. *McClintic*, 11 W. Va. 399; *Chealham* v. *Barfoot*, 9 Leigh. 580.

It would seem, however, that the executor might have been relieved from liability for said second bond by passing it over to the administrator *de bonis non*, and the subsequent sale of the "Gillespie" lands, on which it was a lien for the payment of it.—*Hefferman* v. *Grymes*, 2 Leigh 512. If the liability to account for said bond had not become fixed before the re-sale of said lands, then neither the executor nor the administrator *de bonis non* could be made liable until the proceeds of such re-sale had been properly paid to him. The exchange of receipts and papers made between Clark, commissioner, W. J. Woodell and the plaintiff was not a satisfaction of the debt for the purchase money of the land due from W. J. Woodell.—*Asberry* v. *Asberry*, 33 Grat. 463; *Pinckard* v. *Wood*, 8 *Id*. 140. The said transaction without relieving either Wooddell or Clarke from liability, if they were under any, may have made the plaintiff and his sureties in the second bond liable for the debt, but if the plaintiff was insolvent at that time said transaction would not bind his said sureties for said debt. An insolvent fiduciary cannot, without the receipt of substantial assets, place a liability of that character upon his sureties.—*Gilmer* v. *Baker*, 24 W. Va. 72.

For the reasons aforesaid the decree of the circuit court must be reversed with costs to the appellants against the appellee Wm. M. McCallister as special receiver and the cause remanded to said court for further proceedings with leave to any of the parties other than the plaintiff in the original cause to introduce new evidence, &c., &c.

REVERSED. REMANDED.