# CHARLESTON.

United States Fidelity & Guaranty Co. v. Home Bank for Savings.

Submitted February 22, 1916.   Decided February 29, 1916.

1. Equity—*Jurisdiction—Legal Demand.*

    When a demand, whether arising out of the relationship of principal and surety, or upon contract, express or implied, is purely a legal one, and not requiring the intervention of a court of equity for its enforcement, equity is without jurisdiction to grant relief. (p. 667).

2. Subrogation—*Enforcement—Trust Funds—Equitable Relief.*

    But where there is no privity of contract between the parties, but the demand is based upon principles of equity and justice, as for fraud or participation by defendant in a breach of trust by a fiduciary, equity will take jurisdiction at the suit of the beneficiary or cestui que trust, or at the suit of a surety of such fiduciary and by substitution grant relief, against an intermeddler with the trust funds. (p. 668).

3. Banks and Banking—*Deposit by Administrator—Misappropriation of Trust Fund—Liability of Bank.*

    The mere fact that checks payable to an administrator in his fiduciary character are offered for deposit in a bank, and, by direction of the fiduciary, credited to his individual account, is not sufficient to charge the bank with notice of fraudulent intent of the fiduciary to misappropriate the trust fund, or to require the bank to supervise the subsequent distribution of the funds, and to render it liable for the default of the fiduciary. (p. 668).

4. Same—*Deposit by Administrator—Power of Bank.*

    Unless there be something in the character·of the account of such fiduciary to individualize it, a bank has ordinarily no right to exercise a supervisory control over the funds on deposit, nor to refuse payment of the fiduciary's checks drawn against his account. (p. 668).

5. Same—*Trust Funds on Deposit—Misappropriation by Administrator —Liability of Bank.*

    To render a bank liable in such cases for the default or misappropriation of funds by a fiduciary deposited to his individual or fiduciary account, the bank must have participated in the fraud or misappropriation, as by appropriating the funds, or receiving payment out of such fund on the individual indebtedness of the fiduciary to it, or by otherwise co-operating in the fraud of the fiduciary. (p. 669).

Appeal from Circuit Court, Harrison County.

Suit by the United States Fidelity & Guaranty Company against the Home Bank for Savings. From a decree for defendant, plaintiff appeals.

*Affirmed.*

*Davis, Swartz & Templeman,* for appellant.

*Homer W. Williams,* for appellee.

MILLER, JUDGE:

Plaintiff declining to amend, its bill by the decree appealed from was dismissed on demurrer.

As surety on the bond of Dever Boring, administrator of the estate of Rachael M. Boring, deceased, plaintiff seeks a recovery from defendant on equitable grounds of the sum of eight hundred and sixteen dollars and seventy three cents, the amount which it was required to and did pay for the default of said administrator.

The grounds or theories upon which defendant's alleged liability is predicated are: First, that during the years 1909 and 1910, it received from Boring, administrator, three checks on the Empire National Bank, as follows: The first, a check of "John D. Pickens, Exr. of the estate of James Pickens", payable to the "order of Dever Boring, Admr. of R. M. Boring, decd.", for five hundred and sixty eight dollars and fifty four cents, endorsed "Dever Boring, Admr."; the second, a check of "John D. Pickens, Exr. of Ann M. Pickens, decd." payable to the "order of Dever Boring, administrator of R. M. Boring, Decd." for "four hundred and seven dollars and seven cents", "for estate of R. M. Boring, Decd." and endorsed, "Dever Boring, Admr."; the third, a check of said "John D. Pickens, Exr. of Ann M. Pickens, Decd." to the "order of D. Boring, Admr. of R. M. Boring", for three hundred and twenty two dollars and six cents, "From the Estate of Ann Pickens, decd.", and endorsed "Dever Boring"; and that instead of carrying the same to his credit as administrator, credited the amount thereof, as directed by him, to his individual account: Second, that having so credited said checks to Boring's individual account, and not to him in his fiduciary capacity, defendant permitted him, on

checks signed by him as administrator, to disburse sums aggregating four hundred and sixty seven dollars and eight cents, and the residue thereof, with other moneys deposited by him individually, to be drawn out on his individual checks and to be thereby appropriated to his own use, in violation of and in breach of his trust, and that he thereafter died insolvent and indebted to said estate in the sum which plaintiff as his surety on his bond had been required to pay for his defalcation as aforesaid; Third, that defendant, at the times it so received said checks and credited the same to the individual account of Dever Boring, had notice that the same represented funds belonging to the estate of Rachael M. Boring, deceased, and were not the individual funds of said administrator; and, moreover, that if defendant did not have actual knowledge of the fiduciary character of said funds, it was chargeable with notice thereof upon the face of the checks, and that it was its duty to have placed the same to the credit of said Dever Boring, as administrator, and not to his individual account; and furthermore should not have permitted him to withdraw the same or any part thereof upon his individual checks, and thereby to appropriate the said money to his own use, and whereby defendant, along with said Dever Boring, was guilty of the unlawful conversion and misappropriation of said money, and liable with him to the said estate and to the heirs of said Rachael M. Boring, and that plaintiff as surety and by right of subrogation or substitution is now entitled to recover from it the amount paid in discharge of said liability; and the prayer of the bill is for a decree against defendant for the amount so paid by it on account of its liability on said bond.

The first proposition urged on behalf of defendant in support of the decree, but controverted by appellant's counsel, is, that if entitled to any relief a court of law is competent and able to give full and adequate relief, and that on familiar principles a court of equity is without jurisdiction to grant the relief prayed for. The law undoubtedly is, as many times decided here, that when the demand, whether arising out of the relationship of principal and surety or otherwise, or upon contract, express or implied, is purely a legal one, and does not require the intervention of a court of equity upon some

principle or rule of equity cognizance to afford full relief, a court of equity is without jurisdiction in the premises, and that the parties will be relegated to the legal forum. *Bartlett v. Armstrong,* 56 W. Va. 293; *Teter, Adm'r.* v. *Teter,* 65 W. Va. 167; *Maxwell, Trustee* v. *Davis Trust Co.,* 69 W. Va. 276; *Conrad* v. *Buck,* 21 W. Va. 396.

. But in the case at bar the right claimed does not arise out of any privity of contract, express or implied, between plaintiff and defendant; nor does the bill allege any right of subrogation to securities held by the beneficiaries of the trust, and to which the surety would be entitled, or entitled to have enforced. The theory of the bill is that defendant participated in the fraud and misappropriation of the funds by the fiduciary, and thereby rendered itself liable to the personal representative or the beneficiaries of said estate, and that plaintiff's liability, as surety, having been discharged by payment, upon like equitable principles it is entitled to be substituted to the equitable rights of the beneficiaries of the estate, and to pursue and recover from defendant the money so misappropriated. In such cases the right is not redressible in a court of law, but is one purely of equitable cognizance, and relievable in a court of equity. *Haffey's Heirs* v. *Birchetts,* 11 Leigh 83, 89; *Myers* v. *Miller,* 45 W. Va. 595, 610; *Wooddell* v. *Bruffy's Heirs,* 25 W. Va. 465; *Neff* v. *Baker & Triplett,* 82 Va. 401; *National Bank* v. *Insurance Co.,* 104 U. S. 54, point 5 syl.; *McNeil* v. *Miller,* 29 W. Va. 480; *Conrad* v. *Buck, supra; Asberry's Adm'r* v. *Asberry's Adm'r,* 33 Grat. 463.

But as pleaded we are of opinion that no case calling for relief is presented by the bill. It is not alleged that defendant profited or otherwise reaped any benefits from the deposits of Boring, administrator, except what would be derived from the deposit itself; none of the money was appropriated to pay or discharge any personal indebtedness of Boring to the bank; and it is not charged that the bank in any other way participated in the misappropriation of the money or the default of the administrator, nor that it had any knowledge of the fact or intention to so misappropriate the fund, other than what might be derived from the face of the checks deposited and those upon which the funds deposited were drawn out; nor

are any facts or circumstances alleged which should have put the defendant on notice that the funds so deposited were being misappropriated by said fiduciary other than what may have been disclosed by the character of the checks deposited and those issued by him as stated. We do not think these sufficient to charge defendant as a participant in the default or fraud of Boring, administrator, and no authorities are cited justifying such a conclusion. The checks deposited were payable to Boring, Admr.; he had absolute dominion over them, and of the proceeds thereof. He was authorized to collect the money from the bank on which they were drawn, and deposit it according to his pleasure in any other bank, or he could deposit the checks to his credit individually, or in any other way without thereby rendering himself liable as for a breach of trust, and the "descriptio personae" in the checks would not be sufficient to charge the bank of deposit with notice of a breach of trust nor render it liable to see to it that the funds were not withdrawn for misappropriation. *Trust Co.* v. *Crawford and Ashby,* 69 W. Va. 109; 2 Michie on Banks and Banking, 925, section 129; *Id.* 944, section 130, (lcb); 1 Daniel on Negotiable Instruments, (6th Ed.) section 265; *Safe Dep. & Trust Co.* v. *Bank,* 194 Pa. St. 334.

The relationship of banker and depositor is that of debtor and creditor, and the contract of the bank is to safely keep the money and to pay it out on check or order of the depositor, unless there is something in the character of the deposit to individualize it, and the bank has no supervisory power over the deposit, or appropriation thereof. Ordinarily a bank cannot refuse to honor a check drawn on an account of its customer; to do so would be a violation of its contract. 2 Michie on Banks and Banking, 925, section 129 (2); *Id.* 936; *Id.* 941; *Nolting* v. *National Bank of Virginia,* 99 Va. 54, 37 S. E. 804; *Bank of Virginia* v. *Craig,* 6 Leigh 399; *Batchelder* v. *Cent. Nat. Bank of Boston,* 188 Mass. 25, 73 N. E. 1024; *Munnerlyn* v. *Augusta Savings Bank,* (Ga.) 30 Am. St. Rep. 159.

To render a bank of deposit liable for the default or misappropriation by a fiduciary of a trust fund deposited it must have actually participated therein, or with knowledge reaped some benefit therefrom, as by itself appropriating the

money or receiving it in payment of some individual indebtedness of the fiduciary to it, and thereby rendering itself liable as trustee or otherwise. The mere ordinary benefits of the account of the depositor will not be sufficient to so charge it. *Duckett* v. *Nat. Mech. Bank,* 86 Md. 400, 63 Am. St. Rep. 513; *Union Stock Yards Bank* v. *Gillespie,* 137 U. S. 412; *Munnerlyn* v. *Augusta Savings Bank, supra; Farmers & Traders Bank* v. *Fidelity & Deposit Co.,* 108 Ky. 384. No better illustration of the application of this proposition can be found, perhaps, than the case of *Duckett* v. *Nat. Mech. Bank,* just cited, a case especially relied on by plaintiff's counsel. That case involved the deposit of two checks, both payable to the cashier of the bank. One of these contained this direction, ''for deposit to the credit of Clagett, personally''—that is not to him as trustee, but it contained an additional memorandum showing it represented money coming from a trust estate; the other with direction on its face ''to deposit to the credit of Henry W. Clagett, trustee.'' For the money represented by the first check the bank was held not liable for its misappropriation; but as to the other, and for failure to credit the money to Clagett's account as trustee, as specifically directed, and for putting the money to his individual credit, it was held liable as for a co-operation in the breach of trust by Clagett, the trustee. In the other cases cited defendants were rendered liable on principles of equity and justice, for having of their own motion or by collusion with their depositor, appropriated the trust funds to the payment of some individual liability or indebtedness of the depositor to them. We are cited to no authority for holding a bank liable for a breach of trust by its depositor under any other circumstances. For aught a bank would know a check though payable to its depositor in some representative or fiduciary character, the money would belong absolutely to him, and represent money already paid out by him in discharge of his fiduciary liability; the bank cannot assume that money paid out on checks of a fiduciary is being misappropriated, and it has the right to assume that it is being properly appropriated, at least until it has actual notice to the contrary. To place the burden of supervising all such accounts upon a bank of deposit would be unreasonable, and one which

few institutions, if any, would be willing to assume; indeed it would be unbearable, and to do so would in many cases deprive all fiduciaries of banking privileges, and work a detriment to estates and fiduciaries generally. So upon principles of equity and justice we cannot see that the bill presents a case for the relief of subrogation or substitution sought thereby, and our conclusion is that the decree should be affirmed.

*Affirmed.*