Syllabus.

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## COCKE'S ADMINISTRATOR, ET ALS. V. L. L. LOYALL, ET ALS.

### June 14, 1928.

#### Absent, Prentis, P.

Argued and submitted before Judge Holt took his seat.

1. EXECUTORS AND ADMINISTRATORS—*Devastavit—Liability of Surety on Bond Executed After the Devastavit—Case at Bar.*—The instant case was an action against an executor and a surety on the bond of the executor. The executor had qualified under an alleged will appointing him executor without security, and immediately after qualification began to administer upon the estate. The heir at law appealed from the order admitting the alleged will to probate, and the court, on appeal, held that the alleged will was not the last will and testament of the decedent. While the appeal was pending, the executor was required to give bond, and the surety company became surety thereon. It was conceded that the *devastavit* for which complainant was attempting to hold the surety company responsible under the bond was committed while the executor was acting under his sole bond and before the court required him to·give an additional bond with security.

   *Held:* That the court did not err in dismissing the bill as to the surety company.

2. BONDS—*Official Bonds—Liability of Surety on Additional Bond—Section 281 of the Code of 1919.*—The surety on an additional bond under section 281 of the Code of 1919 is only liable for the peculations of the principal committed after the execution of said bond.

3. EXECUTORS AND ADMINISTRATORS—*Liability of Bank for Misapplication by Representative—Checks Signed as Representative—Case at Bar.*—In the instant case an executor withdrew from a bank a fund of the estate by checks, signed by him as executor, and made payable to two other banks. When collected the proceeds of the checks were placed to the credit of the executor in the respective banks and misappropriated by him. In a suit in equity against the executor and the banks it was claimed that the banks were liable because of their alleged knowledge that the fund involved was a fiduciary fund and

that it was the duty of the defendant banks to place this fund to the credit of the executor in his fiduciary, and not in his individual, capacity. No fraudulent participation in the illegal disbursement by the executor was charged against the banks, nor was it claimed that the banks received any part of the fund as payment for any debts due them. The banks demurred to the bill and the demurrer was sustained.

*Held:* That the lower court did not err in sustaining the demurrer.

4. BANKS AND BANKING—*Relationship of Banks to their Depositors—Bank as Trustee.*—Banks, in their relations with depositors, are held to a rigid responsibility, but a bank is not a trustee, in general, of its cash deposits. The relationship that exists between a bank and its depositor is that of debtor and creditor. A bank's contractual duty is discharged when it securely keeps the money and pays the check on order of the depositor when properly presented. It has no right to wilfully or arbitrarily refuse to honor the demand of a depositor, and if it does so, it will be liable for resultant damages.

5. BANKS AND BANKING—*Liability of Bank—Trust Funds—Misappropriation.*—If a bank fraudulently participates in the misappropriation of funds under its care, or if a bank receives payment of a debt due it from trust funds under its control, it will render itself liable as trustee or otherwise.

6. BANKS AND BANKING—*Liability of Banks where Executor Withdraws a Deposit and Misappropriates It—Burden of Proof—Case at Bar.*—In the instant case an executor placed with two banks checks on another bank signed by him as executor for collection. When the checks were collected the proceeds were placed in the respective banks to the credit of the executor and afterwards misappropriated by him. In a suit against the banks to hold them liable for the funds thus misappropriated, the burden was on complainants to establish fraud upon the part of defendants in honoring the checks of the executor, or to show that they derived a pecuniary benefit from their dealings with him. This burden complainants refused to assume by failing to allege fraud or receipt of pecuniary benefit on the part of the bank. The fact that the checks bore some *indicia* of trusteeship did not of itself constitute the defendant banks inquisitors whose duty it was to inquire into the private affairs of a depositor, to ascertain whether he was acting in an honest or dishonest manner.

7. BANKS AND BANKING—*Executors and Administrators—Checks Signed by an Executor Placed to the Credit of the Executor—Liability of the Banks to the Estate—Case at Bar.*—In the instant case checks, though signed as executor, were payable to the defendant banks. In the ordinary course of business they were placed, as directed, to the account of the depositor. Relying upon the legal presumption that people are honest, the banks had a right to assume that as between the executor and the estate the checks represented a *bona fide* transaction.

8. BANKS AND BANKING—*Checks—Trustee, Executor, or Agent—Duty to Make Inquiry.*—Every time the word trustee, agent, or executor appears upon a check or draft it is not the duty of the bank to make inquiry. To place the burden of supervising all such accounts upon a bank of deposit would be unreasonable, and one which few institutions, if any, would be willing to assume; indeed, it would be unbearable.

9. BANKS AND BANKING—*Trust Funds—Deposit by Agent to Individual Account—Misappropriation—Liability of Banks.*—The mere fact that a check payable to an agent as such is offered for deposit in a bank, and, by direction of the agent, credited to his individual account, is not sufficient to charge the bank with notice of fraudulent intent of the agent to misappropriate the trust fund and render it liable for the default of the fiduciary.

10. BANKS AND BANKING—*Trust Funds—Liability of Bank.*—The law is well stated that in order to hold a bank liable for misapplication of trust funds and for breach of the trust, the bank must be a party to the same.

Appeal from a decree of the Circuit Court of Louisa county. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*David Meade White* and *Gordon & Gordon,* for the appellants.

*W. C. Bibb, Jno. Q. Rhodes, Jr.,* and *John G. May,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from two decrees of the Circuit Court of Louisa county, and presents the following case:

Mrs. Ellen A. Cocke departed this life in March, 1925, without issue, leaving an estate of about $2,000. A short time after the death of Mrs. Cocke, L. L.

Loyall produced before the clerk of the circuit court for probate a paper writing purporting to be the last will and testament of Mrs. Cocke, by the terms of which her estate, real and personal, was devised and bequeathed to Loyall, and he appointed her executor, without security. No objection being urged, the clerk admitted the purported will to probate and Loyall was permitted to qualify as executor without security. Immediately upon his qualification Loyall began to administer upon the estate.

Belle F. Brooking, claiming to be an heir at law of Mrs. Cocke, appealed from the order and judgment of the clerk admitting the purported will to probate, to the circuit court; and upon said appeal assailed the alleged will as a forgery. While the appeal was pending, upon motion, Loyall was required to give security on his executorial bond, and the American Security Company of New York became security thereon.

All matters of law and fact were submitted to the court, which held that the said paper was not the last will and testament of said decedent and that she died intestate. Thereupon, R. E. Trice was appointed administrator of the estate of the decedent, and found, upon investigation, that Loyall had embezzled at least the sum of $1,930.11, belonging to the estate, and which at the time of decedent's death was on deposit in the Union Bank of Richmond.

This fund was withdrawn from the Union Bank in the following manner: One check, signed by Loyall, as executor, for the sum of $1,608.00 was made payable to the First National Bank of Louisa; the other check, similarly signed, was drawn in favor of the Bank of Louisa, for the sum of $322.11. When collected, the proceeds from these two checks were placed to the credit of Loyall in the respective banks and same appropriated by him.

The bill in the instant case seeks to hold the bonding company liable by reason of its suretyship on the ground that "under the terms of the said order and bond the said Loyall and his said surety is bound not only for the money which he actually received at the date thereof, but also for moneys which he should have received in due course of adminstration."

[1, 2] It is conceded in the pleadings, and in the petition for appeal, that the *devastavit* of the estate was committed by the defendant during his executorship without security under the alleged will of the said decedent; that is to say, while Loyall was acting under his sole bond executed before the clerk March 30, 1925, and before the court required him to give an "additional" bond with security. The additional bond was given by Loyall on August 10, 1925, with that defendant as security.

Section 281 of the Code of 1919, pursuant to which the bond in question was executed, reads as follows: "Where it is provided by any section of this Code, or shall be provided by any subsequent statute, that any new bond, or bond in addition to one already given, may be required to be given by any officer, fiduciary, or any other person, if such new bond, when required, be given and accepted, the sureties in the former bond and their estates shall, except in cases where it is otherwise expressly provided, be discharged from all liability for any breach of duty committed by their principal after such new bond is so given and accepted, the former bond shall continue in force and have the same effect in all respects as if such additional bond had not been required, given, and accepted; except that in such case the sureties in the additional bond shall be jointly liable with the sureties in the former bond for any breach of duty committed by their prin-

cipal after such additional bond was so given and
accepted."

There is no merit in the contention that the court
erred in dismissing the bill as to the American Surety
Company. The language of the statute, "except that
in such case the sureties in the additional bond shall
be jointly liable with the sureties in the former bond
for any breach of duty committed by their principal
after such additional bond was so given and accepted,"
is so plain that it needs no construction further than
to say that a surety on an "additional bond" is only
liable for the peculations of the principal committed
after the execution of said bond.

[3] Failing in their efforts to hold the surety com-
pany liable, complainants then sought to recover of the
defendant banks. The allegations of the bill upon
which recovery is based may be thus epitomized: (1)
That the banks are liable because of their alleged knowl-
edge that the fund involved herein was a fiduciary
fund; (2) that it was the duty of the defendant banks
to place this fund to the credit of Loyall in his fiduciary,
and not in his individual, capacity.

Defendants demurred to the bill, on the ground that
it failed to state a good cause of action. This demurrer
was sustained.

[4] Since the decision of this court in *Bank* v. *Rich-
mond Elec. Company*, 106 Va. 347, 56 S. E. 152, which
strictly followed a long line of decisions, the law has
been settled that banks, in their relations with deposi-
tors, are held to a rigid responsibility. Nowhere has
it been held, however, by this court, that a bank was
either in morals or in law a trustee, in general, of its
cash deposits. The relationship that exists between a
bank and its depositor is that of debtor and creditor.
A bank's contractual duty is discharged when it

securely keeps the money and pays the check or order of the depositor when properly presented. It has no right to wilfully or arbitrarily refuse to honor the demand of a depositor, and if it does so, it will be liable for resultant damages.

[5] On the other hand, it has long been the law that if a bank fraudulently participates in the misappropriation of funds under its care, or if a bank receives payment of a debt due it from trust funds under its control, it will render itself liable as trustee or otherwise. *United States Fidelity & Guaranty Co.* v. *Home Bank for Savings*, 77 W. Va. 665, 88 S. E. 109; Daniel on Neg. Inst., volumn 2, section 1612-A.

No fraudulent participation in the illegal disbursement by Loyall is charged against the banks; nor is it claimed that the banks received any part of the fund as payment of any debts due them.

[6] The questions of fraud and payments being thus eliminated, the question presented for our determination is whether the defendant banks rendered themselves liable to the complainants when they accepted the checks from Loyall, under the circumstances detailed, and deposited the proceeds thereof to his personal account. In sustaining the demurrer of the defendant banks, we are of the opinion that the action of the trial court is sustained by the great weight of English and American authority. The burden was on the appellants to establish fraud upon the part of the defendants in honoring the checks of Loyall, or to show that they derived a pecuniary benefit from their dealings with him. This burden they refused to assume when they failed to allege fraud or receipt of pecuniary benefit. The fact that the checks bore some *indicia* of trusteeship did not of itself constitute the defendant banks inquisitors whose duty it

was to inquire into the private affairs of a depositor, to ascertain whether he was acting in an honest or dishonest manner.

[7] The checks in question, though signed as executor, were payable to the First National Bank of Louisa and The Bank of Louisa. In the ordinary course of business they were placed, as directed, to the account of the depositor. Relying upon the legal presumption that people are honest, the banks had a right to assume that as between Loyall and the estate of Mrs. Cocke the checks represented a *bona fide* transaction.

[8] If the rule contended for by appellants were put into effect, every time the word "trustee" or "agent" appeared upon a check or draft it would be the duty of the bank to make inquiry. Discussing such a rule, the court, in *United States Fidelity & Guaranty Co. v. Home Bank for Savings*, 77 W. Va. 665, 88 S. E. 109, said: "To place the burden of supervising all such accounts upon a bank of deposit would be unreasonable, and one which few institutions, if any, would be willing to assume; indeed, it would be unbearable, and to do so would in many cases deprive all fiduciaries of banking privileges, and work a detriment to estates and fiduciaries generally."

In Morse on Banks and Banking, section 317, we read: *"Bank's Duty as to Trust Fund*—The banker cannot excuse his disobedience to his customer's orders, in the due course of business, by setting up that he knew, or had reason to believe, that the customer's order was given in promotion of an unlawful purpose. For example, the banker is not justified in refusing to honor the depositor's check because he knows or believes that the check is an appropriation of funds to a person, or for a purpose, to whom, or for

which, the depositor is not lawfully authorized to appropriate these funds."

In *Life Insurance Co. of Va.* v. *American National Bank of Richmond,* 6 Va. Law Reg. (N. S.) 106, the rule is stated in the syllabus as follows:

[9] "*Banks and Banking—Deposit by Agent—Misappropriation of Trust Fund—Liability of Bank.*—The mere fact that a check payable to an agent as such is offered for deposit in a bank, and, by direction of the agent, credited to his individual account, is not sufficient to charge the bank with notice of fraudulent intent of the agent to misappropriate the trust fund and to render it liable for the default of the fiduciary."

[10] In the leading case of *Grey* v. *Johnson,* L. R. 3 Eng. & Ir. App. Cas. 1, it appears that an executrix, by a check signed by her as such, payable to a mercantile firm of which she was a member, drew out of the bank a fund belonging to the estate.    Lord Chancellor Cairons, in delivering his opinion, states the law thus: "It would be a serious matter if bankers were to be allowed on light and trifling grounds, or grounds of mere suspicion or curiosity, to refuse to honor a check drawn by their customer, even though the customer happens to be an executor or adminstrator.    The law is well stated that in order to hold a bank liable for misapplication of trust funds and for breach of the trust, the bank must be a party to the same."

Numerous cases are cited by appellants which seemingly sustain their contention.    Most of these decisions are based upon the leading case of *Duckett* v. *National Mech. Bank,* 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513.    This case, in our view, does not sustain the contention made.    It is unnecessary to analyze this case, as it has been analyzed in almost every decision subsequent thereto.

Upon an examination of the other cases cited it will be observed that the banks were held liable because there was a violation of the contract of deposit, or the money was erroneously paid out.

A question similar to the one under consideration was involved in the case of *Empire Trust Co.* v. *Cahan*, 274 U. S. 473, 47 S. Ct. 661, 71 L. Ed. 1158, decided May 31, 1927, 71 L. Ed. 826, by the Supreme Court of the United States.   With characteristic succinctness, Mr. Justice Holmes so completely covers the question that, for the convenience of the profession, we quote the full opinion:

"This is a suit brought by the respondents to charge the petitioner with liability for the proceeds of checks drawn upon the agents of the Bank of Montreal, or the Guaranty Trust Company, in New York, and deposited with the petitioner by the respondent's son. The respondent, a Canadian lawyer, had accounts with the two banks named, and in 1916 gave to his son powers of attorney to draw checks upon them, both powers being general and with no qualification as to the purposes for which such checks might be drawn.   Beginning in July of that year and from time to time down to October, 1918, the son drew checks signed with his father's name by himself as attorney against his father's two accounts, payable seventeen to his own order, three to the order of petitioner, and deposited them to his own private account with the petitioner.   All the checks but two were certified by the Guaranty Trust Company or accepted by the other bank, as the case might be. Subsequently the son drew out these funds and applied them to his own use.   The respondent did not discover the fraud until the end of 1919, at which time his son absconded.   The petitioner had no knowledge that the

son was misappropriating his father's money and no notice other than what was given by the form of the checks. The district court and the circuit court of appeals for the second circuit held that notice sufficient to charge the petitioner as matter of law, and gave judgment against it, the circuit court of appeals adding interest on the several items from the date when they were credited to the son. 9 F. (2d) 713. A writ of *certiorari* was granted by this court. 271 U. S. 653, 70 L. Ed. 1133, 46 Sup. Ct. Rep. 482.

"No doubt the question is, as was said by the circuit court of appeals, a question of degree, like most questions in the law; but we are of opinion that the court below applied too strict a rule to an ordinary business transaction. The court itself pronounced it 'a hard rule as business is ordinarily conducted,' and seemingly adopted it as much because of authority by which it felt bound as because it confidently thought the rule right. The petitioner had notice that the checks were drawn upon the respondent's account, but they were drawn in pursuance of an unlimited authority. We do not perceive on what ground the petitioner could be held bound to assume that checks thus lawfully drawn were required to be held or used for one purpose rather than another. In the case of checks drawn by a corporation not likely to disburse except for corporate purposes there might be stronger reasons for requiring a bank to be on its guard if an officer having power to draw them deposited checks for considerable sums to his private account; but it recently has been held otherwise by the judicial committee of the privy council. *Corporation Agencies Limited* v. *Home Bank of Canada* (1927), A. C. 318. And when the two parties are father and son, both of mature years and of good standing, secret limitations of the power are a

pure matter of speculation into which it seems to us extravagant to expect the bank to inquire. The person reposing confidence in the son was not the petitioner but the respondent. (*National Safe Deposit, Sav. & T. Co.* v. *Hibbs,* 229 U. S. 391, 397, 57 L. Ed. 1241 [1247], 33 Sup. Ct. Rep. 818), and he himself tells us that his confidence was unlimited. He put his deposits absolutely into his son's power, and the son, if he drew currency, as he might, could do with it as he saw fit. The notice to the bank was notice only of this relation of the parties. The petitioner in permitting the son to draw out the money was permitting what it, like the respondent's banks, would have been bound to allow even if the deposit had been earmarked as a trust. The form in which the withdrawals took place does not appear. They might have been, like the deposits, in checks to the son's own order. All that is known is that the respondent did not get the benefit of them. But we do not place our decision upon that narrow ground. For in addition to what we have said, the transactions went on for over two years and the petitioner fairly might expect the respondent to find it out in a month or two if anything was wrong. Careful people generally look over their bank accounts rather frequently.

"It is very desirable that the decisions of the courts of the United States and that of the highest court of the States where the business was done, should agree, as was recognized by the Circuit Court of Appeals. The result to which we come restores that agreement, at least when the checks are certified or accepted by the banks upon which they are drawn, as was the case here with all but two. *Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470. The certification did not import a statement by the certify-

ing bank that, beside the right of the son to draw, established by the power of attorney, the purposes for which the checks were drawn were lawful and were known by the banks. As the court remarks in the case cited: 'The transactions of banking in a great financial center are not to be clogged, or their pace slackened, by overburdens or restrictions.' 234 N. Y. 406, 138 N. E. 37.''

The status of a present day bank has been admirably described by the learned judge of the lower court, the Honorable Alexander T. Browning. In a written memorandum filed with the record it is said: "Banks are essential factors of modern business life. A tremendous and an increasing proportion of the business of the country is transacted through them. Their primary function is to guard not their depositors but their deposits, and in the exercise of this function they should be held to a strict accountability. This is required by reason and by law. Beyond this sphere their actions should be measured by the same rules as measure the actions of others. Any other standard would be artificial, or at least discriminatory. Their usefulness would not be extended, but they would be hampered in their proper sphere by diverting their energies and requiring them to act as sureties for and overseers over those with whom they deal; nor does it seem to me that any sound policy requires them to do so. To hold them liable when they have received no benefits nor violated any contract, expressed or implied, would be to measure their acts by more stringent rules than are applied to others."

Upon the whole case, we are of the opinion that the decrees should be affirmed.

*Affirmed.*