## POWELL v WICK et

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 31, 1935

Wickham, McBride & Johnson, Youngstown, for plaintiff in error.

Morgan, Cailor & Cunningham, Youngstown, for defendants in error.

**OPINION**

By NICHOLS, J.

There has been some question raised here as to whether the action in the Common Pleas Court was one in equity or one at law, but we find that upon the trial of the case in the Common Pleas Court, by agreement of all parties, a jury was waived and the cause submitted to the court sitting as a jury. Since error and not appeal was prosecuted to this court, we do not deem it important whether the issue was one in equity or at law, but we observe that plaintiff prays for money judgments, and in the praecipe attached to the petition it is stated that the cause is for money and equitable relief. It seems to this court that the ultimate relief sought was money judgments against the various defendants, and if this be so, the action was properly tried at law. The following is a copy of the finding and judgment entered in the Court of Common Pleas, as shown by the journal of said court:

"This cause came on for hearing upon the amended petition of the plaintiff, the answers of Phillip Wick, E. E. Swartswelter, Richard Brown, George D. Wick, Jr., The Federal Savings and Loan Company, Morris Plan Bank, James M. Chrystal and Grace S. Chrystal, and the Dollar Savings & Trust Company, Frances Tod Wick, Phillip Wick and Webster B. Tod, as Executors of the Estate of Myron C. Wick, Jr., deceased, and the answer and cross petition of Butler, Wick and Company, and the jury having been waived by all of the parties hereto, the cause was submitted to the court, and the court upon hearing of all the testimony of the various parties, and after having given full deliberation to the various sundry issues raised by the various pleadings, finds that judgment should be rendered in favor of the defendants, Phillip Wick, E. E. Swartswelter, Phillip Schaff, Robert Wadsworth, Richard Brown, George D. Wick, Jr., The Federal Savings & Loan Company, Grace S. Chrystal, Morris Plan Bank and The Dollar Savings & Trust Company, Frances Tod Wick, Philip Wick and Webster B. Tod, Executors of the Estate of Myron C. Wick, Jr., deceased, and Butler-Wick and Company.

The court further finds that the plaintiff, Eleanor C. Powell, is entitled to judgment against the defendant, James M. Chrysal, upon the allegations set out in her petition for moneys devoted to his personal use from the trust funds in his hands belonging to the plaintiff, in the sum of Twelve Thousand Seven Hundred and Seventy-four Dollars and forty-nine cents ($12,774.49) with interest from the first day of June, 1934, and that said judgment shall be a lien upon the properties of the defendants, James M. Chrystal and Grace S. Chrystal, more particularly described as Youngstown City Lot No. 32942 on Selma Avenue and Youngstown City Lot No. 29317, located on the southerly side of Saranac Avenue in the City of Youngstown.

The court further finds that a receiver may be appointed to facilitate the satisfaction of the aforesaid judgment, but that said application will not be considered by this court until forty days after the filing of the within order.

Court further finds that there is no evidence to sustain a finding in favor of the plaintiff against the defendant, The Morris Plan Bank, and, therefore, judgment is hereby rendered in favor of the defendant, The Morris Plan Bank.

Court coming now to the answer of The Federal Savings and Loan Company, finds that there is no evidence in this record to sustain a finding in favor of the plaintiff against the defendant, The Federal Savings & Loan Company, and it being made to appear to the court that on May 31, 1935, at 3:00 P. M. The Federal Savings & Loan Company of Youngstown, Ohio, a State chartered corporation, was converted into an Assocation chartered under the laws of The United States of America, known as the First Federal Savings and Loan Association of Youngstown, Youngstown, Ohio, and that by virtue of §9660-2 GC all of the assets of every kind and nature heretofore belonging to The Federal Savings & Loan Company were by operation of law vested in FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF YOUNGSTOWN, it is ordered that First Federal Savings and Loan Association of Youngstown be substituted for The Federal Savings & Loan

Company as a party to this action, vested with all the rights, interests, preferences and privileges previously had or obtained by The Federal Savings & Loan Company which shall be preserved unimpaired, and that this action may be prosecuted to judgment with right of review on error or appeal; and by reason of such substitution the finding, judgment and decree of this court is for said substituted defendant, said First Federal Savings and Loan Association of Youngstown.

Court coming now to the answer and cross petition of the defendant, Butler-Wick and Company, finds that the defendant, Butler-Wick & Company, have a contract duly executed by James M. Chrystal as Trustee for Eleanor C. Powell, which contract would permit the defendant, Butler-Wick and Company, to sell the stocks set forth in their answer and cross petition at any time within their discretion, if the value of the stocks is less than the amount due upon the account, and that while the petition of the plaintiff prayed for an injunction, restraining the defendant, Butler-Wick and Company, from selling the aforesaid securities, that said restraining order was never granted to the plaintiff, but that this court at the outset of this litigation, instructed the defendant, Butler-Wick and Company, to take no action by way of disposition of these stocks until the issues had been determined by this court, which said instruction amounted in substance to an injunction upon the defendant, Butler, Wick and Company, restraining them from the sale of these securities. The court now finds that the said Butler, Wick & Company be and hereby are released from said restraining order, and that said injunction is hereby dissolved, and said Butler, Wick & Company is permitted to dispose of said securities, and it is the finding of this court that the value of said securities be fixed as of January 19, 1935; that the undisputed testimony concerning the value of these stocks as of that date, as shown by the record, amounts to One Thousand Six Hundred and Forty dollars and Seventy-five cents, ($1,640.75).

The court further finds that on January 19, 1935, there was due the defendant, Butler, Wick and Company, from the plaintiff, Eleanor C. Powell, the sum of Four Thousand One Hundred and Seventy-eight Dollars and fifty-nine cents ($4,178.59); that after crediting the value of the stocks as of January 19, 1935, to-wit: One Thousand Six Hundred and Forty Dollars and Seventy-five cents ($1,640.75), there is due the defendant, Butler, Wick and Company, from

the plaintiff, the sum of Two Thousand Five Hundred and Thirty-seven Dollars and eighty-four cents ($2,537.84), with interest at six per cent (6%) from the 19th day of January, 1935, for which amount judgment is hereby rendered in favor of the defendant, Butler, Wick and Company, against the plaintiff, Eleanor C. Powell.

Court further finds that on February 29th, 1932, in an attempt to secure Eleanor Powell for the amount due her from James M. Chrystal, a note was executed by Grace S. Chrystal to Eleanor Powell in the amount of Six Thousand Dollars ($6,000.00); that on the same date a mortgage was executed by Grace S. Chrystal and James M. Chrystal to Eleanor Powell covering Lot Number 29317 on Saranac Avenue in the amount of Six Thousand Dollars ($6,000.00). This mortgage was recorded on March 10, 1932, in Volume 358, page 577, Mahoning County Record of Mortgages.

Court further finds that this mortgage and note was never delivered to Eleanor Powell, but was retained in the possession of James M. Chrystal.

The court further finds that the Six Thousand Dollar ($6,000.00) note and mortgage is included in the amount heretofore found due plaintiff from the defendant, James M. Chrystal, but that said mortgage should remain on record to protect the lien of plaintiff's judgment herein.

WHEREFORE, it is ordered, adjudged and decreed that the judgments and orders heretofore set forth be and hereby are decreed to be final judgments; that the restraining order against the Butler, Wick and Company be and hereby is dismissed and exceptions are hereby granted to all parties."

Error is prosecuted to this court by Eleanor Powell against all of the defendants to he amended petition except The Federal Savings and Loan Company and except the Morris Plan Bank.

In the brief, as well as in oral argument, plaintiff in error urges that the findings and judgment of the Court of Common Pleas are contrary to law and against the manifest weight of the evidence. No request was made in the court below that the Common Pleas Court make a finding of facts and conclusions of law. But, from an examination of the above quoted journal entry, and after having carefully read the entire record in this case, as well as the briefs of the parties, we are of the opinion that by its finding and judgment the Common Pleas Court found that the plaintiff had failed to establish her claim that these

insurance moneys were to be invested by her brother in sound securities, but that the fair intendment of the indefinite agreement between the plaintiff and her brother was that he should use these funds for investment and speculation in stocks and bonds, according to his own judgment, she having entire confidence in him and in his ability to so manage, invest and speculate with the same for her best interests and so as to procure not only an income for her, but a profit therefrom by speculation in the manner which the brother had been accustomed to operate on his own account, but that there was nothing in the agreement between plaintiff and her brother whereby the brother was to be authorized to use these moneys for his own personal benefit; that the brother did not fully and truthfully inform plaintiff of the use he had made of her funds for his own personal benefit, but misrepresented to her that he had invested $8,500.00 of her funds for her in a mortgage bearing 7%.

We have little difficulty in finding that the judgment rendered by the Common Pleas Court in favor of Mrs. Powell and against her brother, James M. Chrystal, is not contrary to law or against the manifest weight of the evidence, and that so far as this judgment is concerned, there is no prejudicial error in the record.

Finding from the evidence the nature of the trust agreement between plaintiff and her brother to be as above set forth, it follows that none of the defendants are liable to the plaintiff for the amounts of the trust fund which were expended by James M. Chrystal in his purchase and sale of stocks and bonds. And it follows that since the agreement between plaintiff and her brother authorized him to use this trust fund for the purpose of buying and selling stocks for profit and speculation, the plaintiff is liable to Butler, Wick and Company for the debit balance due them, as shown upon an exhibit attached to the record, and as prayed for in the cross petition of Butler-Wick and Company, and we find no prejudicial error in the record as to the judgment rendered by the Common Pleas Court in favor of Butler-Wick and Company and against plaintiff.

But the most serious matter in this case arises upon the question of the liability of the individual partners of the firm of Wick & Company, because of the unlawful and unauthorized use by James M. Chrystal, for his own purposes, of, approximately $12,-000.00 of the funds entrusted to him by his sister. It is contended by counsel for plaintiff in error that since these so-called trust funds were deposited by James M. Chrystal in an account with Wick and Company, under the name and style of "James M. Chrystal, Trustee for Eleanor C. Powell," and since James M Chrystal was, at the time, one of the partners of the firm of Wick and Company, said company and each of the partners thereof became bound with knowledge of the wrongful acts of Chrystal, and became participants with him in the wrongful diversion of the trust funds. In this respect it is claimed by plaintiff in error, as above stated, that the funds deposited with Wick and Company, being "ear-marked" as "trust funds", it was the duty of the partnership to inquire as to the terms of the trust and to see that the funds were used for no other purpose than that contemplated by the trust agreement. In support of this proposition, plaintiff alleges in her amended petition, for the purpose of showing recognized liability on the part of Wick and Company, that that company caused James M. Chrystal to procure from his sister a certain paper writing, copy of which is attached to the petition as Exhibit A, styled "Trading Authorization with Privileges to Withdraw Money and/or Securities," the original of which paper writing is in evidence and is as follows:

"TRADING AUTHORIZATION WITH PRIVILEGES TO WITHDRAW MONEY AND/OR SECURITIES.
Copy to James M. Chrystal.
Messrs. Wick and Company,
First National Building,
Youngstown, Ohio.
Dear Sirs:

I hereby authorize James M. Chrystal to buy, sell and trade in, for my account and risk and in my name, stocks, bonds and any other securities and/or commodities on margin or otherwise and in accordance with your terms and conditions; and I hereby agree to indemnify and hold you harmless from and to promptly pay you on demand any and all losses arising therefrom or debit-balance due thereon. You will kindly follow his instructions in every respect concerning my account with you, and make payments of moneys and deliveries of securities to him or otherwise as he may order and direct. In all matters and things aforementioned he is authorized to act for me and in my behalf and with the same force and effect as I might or could do.

I hereby waive notification to me of any of the aforementioned transactions and delivery of any statements, notices or demands pertaining thereto, and hereby ratify any

and all transactions heretofore or hereafter made by him or for my account.

This authorization is a continuing one and shall remain in full force and effect until receipt from me of written notice or my revocation thereof.

Dated May 28th, 1928.

(Signed) Eleanor C. Powell."

The record discloses that although this written authorization is dated May 28, 1928, it was in fact sent to Mrs. Powell in New York about August 7, 1930, by her brother, James M. Chrystal, who requested her to sign the same, and it was signed by her about the middle of September, 1930. At or about the date the paper was sent to Mrs. Powell for her signature, the record discloses that one of the managing partners of Wick and Company, for the first time, so far as any evidence shows, went to the records of the firm and then discovered the state of this trust account, at which time the account showed a debit balance of $2,233.62 as against the stocks held for the account.

The record further discloses that up to the time of the signing of this authorization by Mrs. Powell, her brother, James M. Chrystal, had not disclosed to her the fact that he had used a large part of the trust funds for his personal use, and in such situation the authorization was not effective to bind Mrs. Powell as approving the diversion of these funds by her brother, but we can not say that the precaution taken by Wick and Company at that time in procuring this authorization to be signed by Mrs. Powell has any bearing upon the liability of Wick and Company for the unlawful and unauthorized acts of the trustee prior to that date, but it does appear to us that although the paper writing did not operate as a ratification by Mrs. Powell of the past unauthorized and unlawful acts of the trustee, yet, it was sufficient to authorize Wick and Company to recognize the authority of James M. Chrystal as to the future handling of this account. Mrs. Powell was at the time of full age, intelligent and under no restraint.

With what duties and obligations were Wick and Company and the individual partners of said firm charged?

From the records of the company, attached to the bill of exceptions, as exhibits, and from the testimony it appears that Wick and Company received this account in the manner that an account is ordinarily opened with a banking institution. The funds seem to have been subject to check of the trustee, interest was paid by the

company monthly upon credit balance of the account and charged monthly against the fund upon debit balances, the company securing itself for debit balances by a deposit of stocks and bonds purchased by the trustee out of the trust fund. It does not appear that any stocks or bonds were sold directly by Wick and Company to the trustee, that company acting only in its capacity of broker and banker. It appears to us that the rules of law applicable to situations where trust funds have been deposited in a bank by the trustee in his name as trustee for another, are applicable to the situation presented in this case. Undoubtedly, each partner of Wick and Company was charged with knowledge of that which the partnership books and records showed, including the fact that the account in question was a trust account. If the partnership, or any individual partner, had knowledge, actual or constructive, that the trustee was wrongfully diverting these trust funds to his personal use, liability would attach:

"A bank receiving a deposit from one acting in a trust or representative capacity, can not justify a payment to him if it knows, or facts are presented which, if acted on, would disclose, that the fund is about to be wrongfully and unlawfully diverted from the true owner; and in such case it must refund."

5 Banks and Banking (Mitchie) 132, §57 d, and long list of cases cited.

"To charge a bank with notice that a depositor is acting in violation of his trust, so as to render it liable for the amount paid out on his check, or order, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly."

5 Banks and Banking (Mitchie) p. 133, §57 d.

Bachelder v Central National Bank, 188 Mass. 25; 73 NE, 1024.

Loring v Brodie, 134 Mass., 453.

"A bank is liable when it has actual or constructive knowledge that a fraud is being or is about to be perpetrated by the fiduciary, and assists him in making a misappropriation of the trust funds."

5 Banks and Banking (Mitchie) p. 134, §57 e, and numerous cases cited.

Of course, where a bank has notice that funds deposited are trust funds, it can not acquire an interest in or a benefit therefrom in violation of the trustee's authority.

"But the mere ordinary benefits of the account of the depositor will not be sufficient to so charge it."

United States Fidelity etc. Co. v Home Bank, 77 W. Va., 665; 88 SE, 109.

Union Stock Yards Bank v Gillespie, 137 U. S. 411;

Munnerlyn v Augusta Savings Bank, 88 Ga., 333; 14 SE, 554;

Farmers' Bank v Fidelity etc. Co., 108 Ky., 384; 56 SW, 671.

"In the absence of notice that a breach of trust is being committed by an improper withdrawal a bank can not question the right of its customer to withdraw funds, nor refuse to honor his demands by check; and, therefore, even though the deposit is to customer's credit in trust, the bank has no obligation to look after the appropriation of the trust funds when withdrawn or to protect the trust by setting up a 'jus tertii' against a demand. If a fund be deposited in bank by one as trustee, the depositor as trustee has the right to withdraw it, and the bank, in the absence of knowledge or notice to the contrary, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. The bank must honor his checks, when in proper form, unless it then has actual or constructive knowledge that he is by means thereof intending to wrongfully divert the trust funds. Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary, and the imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank."

5 Banks and Banking (Mitchie) pp. 131-132, and numerous cases cited.

There is some authority, however, to the effect that a banker can not inquire into third person's affairs, nor refuse to pay a check merely because he is aware of an intended breach of trust.

"Supposing that the banker becomes incidentally aware that the customer, being in a fiduciary or a representative capacity, meditates a breach of the trust, and draws a check for that purpose, the banker, not being interested in the transaction, has no right to refuse the payment of the check, for if he did so he would be making himself a party to an inquiry as between his customer and a third person."

Morse on Banks and Banking, pp. 728, et seq.

The authorities, taking the position set forth in this language last above quoted, base liability only in cases where the bank participates in the fraud or reaps some benefit therefrom.

The rule in Ohio may be correctly gathered from the statement in 40 Ohio Jurisprudence, p. 539, §235, from which we quote:

"Thus, a bank which receives from the trustee for deposit trust money, which it knows is trust money, or receives an item from the trustee, which on its face shows the trust relation, and accepts the same for deposit in the trustee's name, does not become a participant in the breach by paying the deposit out on the trustee's check. If, however, the bank received the deposit, as above, and applied it to discharge an obligation owed to it by the trustee personally, or thereafter received the trustee's check on the deposit in payment of his own obligation, it would thereby become a participant in the breach of trust and be liable to the cestui que trust."

That notice, actual or constructive, of the wrongful diversion of the trust funds is essential to the liability of the partnership, was evidently in the minds of the pleader is seen from the following allegations of plaintiff's amended petition:

"Plaintiff further says that said partners, doing business as Wick and Company, at all times had knowledge, either actual or constructive, of the uses and purposes upon which the said James M. Chrystal possessed said sums of money and had knowledge either actually or constructively of the uses to which said James M. Chrystal put said money * * * and especially withdrawals therefrom for his own uses and purposes * * * and without any authority from her and contrary to the agreement between this plaintiff and the defendant, James M. Chrystal."

This case comes into this Court of Appeals on error and not on appeal. The Common Pleas Court, by its judgment, found that the individual members of the partnership of Wick and Company had no knowledge, either actual or constructive, of the wrongful diversion of these trust funds by James M. Chrystal, Trustee. From a careful reading of the record we are unable

to say that this finding of the Common Pleas Court was manifestly against the weight of the evidence, or contrary to law, unless, as claimed by counsel for plaintiff, the knowledge which James M. Chrystal had was imputed to the other members of the firm of Wick and Company because of the partnership relationship existing between them.

We can not subscribe to the argument of counsel for the plaintiff in error that the mere fact of the account in question having been entered in the name of "James M. Chrystal, Trustee for Eleanor C. Powell," places upon Wick and Company the obligation to ascertain the nature of the trust agreement and see to the application of the trust fund.

Were the other members of the partnership of Wick and Company bound with knowledge had by James M. Chrystal, one of the partners, that the trust funds were being unlawfully appropriated and used by him, contrary to the provisions of the trust agreement?

From the opinion of Marshall, C.J., in **Tarlecka v Morgan, 125 Oh St, 450,** we read, at page 451 of 181 NE:

"The law of the responsibility of a partner for the acts of another partner is very definitely settled. Each partner is a general agent of the other in the prosecution of the partnership business. An absent partner will be held responsible not alone for the acts done in the interest of the partnership business, but also for any acts committed in the course and scope of the partnership business. A tortious act committed by one partner, which is outisde the general partnership agency, renders that partner alone responsible, because he acts only for himself."

From the syllabi in the last quoted case we read:

"1. Each member of a partnership is a general agent of the partnership and of every other member thereof, when acting within the scope of the business of the partnership.

4. The expression 'scope of the employment' cannot be accurately defined, because it is a question of fact to be determined according to the peculiar facts of each case."

See also **Inglish v Industrial Commission of Ohio, 125 Oh St, 494.**

In the instant case can it be said. that the tortious acts of James M. Chrystal in unlawfully, and without authority of his sister, withdrawing approximately $12,-000.00 of these trust funds and applying them to his own uses and purposes under any stretch of the imagination be deemed to be within the course or scope of his employment as a member of the partnership firm of Wick and Company? It was a question of fact to be determined from the evidence in this case whether James M. Chrystal was acting within the course or scope of the partnership business in withdrawing these trust funds and unlawfully and without authority applying the same to his own use.

From a most careful examination of the record, we are unable to hold that the finding of the Common Pleas Court is manifestly against the weight of the evidence or contrary to law.

We have given most careful consideration to the matters in controversy in this case, being duly appreciative of the unfortunate denouement of this drama growing out of the economic depression. It is singular, however, that the unlawful and unauthorized acts of James M. Chrystal, which have been the subject of this judicial inquiry, have resulted in saving to the plaintiff, a beneficiary of the trust, the only portion of her husband's life insurance money which remains. The funds unlawfully appropriated by James M. Chrystal to his own use are in large part invested in real estate which by the finding and judgment of the Common Pleas Court is made applicable for the reimbursement, in part, if not in whole, to plaintiff.

Having considered all of the errors assigned, and finding no prejudicial error upon the record, and that substantial justice has been done by the finding and judgment of the Common Pleas Court, the judgment is approved and affirmed.

Judgment. affirmed.

CARTER and ROBERTS, JJ, concur.