UNITED STATES FIDELITY AND GUARANTY COMPANY *v.* SMITH HOOD, *Receiver, etc., et al.*

(No. 9013)

Submitted February 6, 1940. Decided March 12, 1940.

*Steptoe & Johnson* and *W. E. Miller*, for appellant.
*Robinson & Stump* and *G. C. Belknap*, for appellees.

MAXWELL, JUDGE:

Herein the surety on a guardian's bond, having paid to the ward the amount of a judgment obtained by him against the guardian and surety, seeks, under the doctrine of subrogation, to recover from the receiver of the bank where the guardianship funds were on deposit the sum of $3,000.00, with interest, representative of an amount of such funds received by the bank from the guardian as a credit on his personal indebtedness to the bank, and so applied.

The plaintiff appeals from a decree of the circuit court dismissing its bill.

On March 19, 1929, United·States Fidelity and Guaranty Company, with approval of the county court of Braxton County, became surety on a bond of $6,000.00 for E. L. Juergens, guardian for John Willis Mollohan, an infant.

Juergens, guardian, received for his ward from the estate of a prior guardian who had died the sum of $4,210.84 which he promptly deposited in the Bank of Sutton, March 25, 1929, in a separate account which on that date he opened as guardian. The following day, by check, he transferred $4,000.00 from the guardianship account to his personal account which disclosed an overdraft immediately prior to this transfer. The same day he gave the cashier of the bank his check, drawn on his personal account, for $3,000.00 which amount was at once credited on the indebtedness of approximately $7,000.00 owing by Juergens to the bank.

From a statement of the guardianship account made by a commissioner of accounts in February, 1935, there appeared a balance of $3,737.44 owing by the guardian to the ward, who then had attained his majority. Later that year, Mollohan obtained a judgment against Juergens and his surety for $3,584.24. The surety paid the judgment.

The bank having been in receivership since 1931, the surety instituted this suit against the receiver and the bank early in 1937.

There is no challenge of the plaintiff's right to subrogation, if the bank would have been liable to the beneficiary of the trust funds for the amount thereof paid to the bank by the guardian on his personal debt.

For the plaintiff the case was excessively pleaded in that the bill contains an unwarranted and wholly unsupported averment, on information and belief, that at the time Juergens became guardian, or shortly prior thereto, there was an understanding between him and the bank that his indebtedness to the bank, or a large part thereof, would be paid out of fiduciary funds coming into his hands as such guardian. This was denied in the answer, and though the plaintiff offered no testimony in support of the allegation, the bank officials testified positively and unequivocally that there had been no such understanding or pre-arrangement. The record indicates no justification for this drastic charge in the bill. The case for the plaintiff is grounded on a different basis.

With the accusation of pre-arrangement eliminated from the equation, the question remains whether, under the circumstances disclosed by the record, the bank was entitled to accept the payment of $3,000.00 in the manner employed by Juergens.

A bank is not ordinarily liable to the beneficiaries of trust funds, on deposit in the bank, diverted by the trustee or other fiduciary thereof for his personal benefit. *U. S. Fidelity & Guaranty Co.* v. *Home Bank for Savings,* 77 W. Va. 665, 88 S. E. 109. But a bank does incur a liability where known trust funds thus on deposit are used by the fiduciary in payment, *pro tanto*, of his individual indebtedness to the bank. This proposition has been dealt with in many cases wherein, of course, the facts have been variant, but, throughout, there extends the underlying principle that the bank has been unjustifiably benefited at the expense of the beneficiaries of the trust fund, and the bank having parted with nothing in the transaction

should account for the diverted funds paid to it. As between the bank and the *cestui que trust,* the latter has the stronger equity. "Where a bank has notice that funds deposited are trust funds, it cannot acquire an interest in or a benefit therefrom. If the bank accepts such funds in payment of a debt due it by the depositor it becomes liable therefor; for it has at once not only abundant proof of the breach of trust, but participates therein for its own benefit." 5 Michie on Banks and Banking, p. 135. Of the numerous cases in point, consult: *Conqueror Trust Co.* v. *Fidelity & Deposit Co.,* 63 F. (2d) 833; *Hale* v. *Windsor Savings Bank,* 90 Vt. 487, 98 Atl. 993; *Allen* v. *Puritan Trust Co.,* 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518; *Fidelity & Deposit Co. of Maryland* v. *Rankin,* 33 Okla. 7, 124 Pac. 71; *Fidelity & Deposit Co.* v. *Hamilton Nat'l. Bank,* Tenn. App., 126 S. W. (2d) 359.

The cashier acted for the bank in making the transfer of $4,000.00 from the account of Juergens, guardian, to his personal account, and in then receiving the Juergens check of $3,000.00, and crediting that amount on his indebtedness. It should be resolved that the cashier in good faith considered that the bank had a right to accept the benefit of this credit, and that he had no intention of participating in a transaction which was unfair to the beneficiary of the trust fund and unjustly enriched the bank. But the fact of his good intentions does not relieve the bank from its liability in the premises. *Brovan* v. *Kyle,* 166 Wis. 347, 165 N. W. 382. The information which the cashier possessed was, of course, chargeable to the bank. He knew that the Juergens personal account would not sustain a withdrawal of $3,000.00, or of any other amount in fact, except for the augmentation from the trust funds. To the suggestion that it did not appear to the cashier but that there was actually due from the guardianship fund to Juergens personally the sum of $4,000.00 which he transferred from the former account to the latter, the answer is that the situation was such as, at the very least, to have put the bank on inquiry concerning the guardian's right to use $3,000.00 of this money as a payment on his personal in-

debtedness to the bank. *Union Stock Yards Nat'l. Bk.* v. *Gillespie,* 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724. Respecting the closely analogous situàtion where a bank permits an official of a corporation to use its funds in payment of his personal debt to the bank, the Circuit Court of Appeals for the Second Circuit stated: "If it (bank) fail to use due care it may be required to pay again. Consequently while in case of a corporate check signed by an officer with express or implied authority, the mere fact that it is drawn to his own order and therefore may be improperly used will not require the bank to question it. But if the bank have knowledge that the officer is using the check for his personal benefit, e.g. to pay his debt to the bank or to deposit it to his personal credit, then the bank is put upon inquiry and if it fail to make it, pays at its peril." *Havana Central R. Co.* v. *Central Trust Co.,* New York, 204 Fed. 546, 551, L. R. A. 1915 B, 715.

In the case of *United States Fidelity & Guaranty Company* v. *Home Bank for Savings, supra,* the court stated: "To render a bank of deposit liable for the default or misappropriation by a fiduciary of a trust fund deposited it must have actually participated therein, *or with knowledge reaped some benefit therefrom, as by itself appropriating the money or receiving it in payment of some individual indebtedness of the fiduciary to it,* and thereby rendering itself liable as trustee or otherwise." (Emphasis supplied.) Insistence is made at bar that the knowledge which is required on the part of the bank, in order that it may be liable in such circumstances, means more than merely the information .which is available to the bank from its books, and implies a guilty participation in the fraudulent conduct of the fiduciary. We are unable to accept this analysis. In order that a bank may be liable for trust funds received from a fiduciary and applied on his individual indebtedness to the bank, there need not be established a fraudulent purpose on the part of the bank officials who handled the transaction. If a responsible representative of the bank knew the facts, as in this case, con-

ceding good faith on his part, his information is imputed to the bank, and it cannot justify its retention of such payment.

The question whether the plaintiff, standing in the position to which the beneficiary would have been entitled, is a common or preferred creditor of the bank, was not reached by the circuit court and consequently not there passed upon. Therefore it is requisite that the cause be remanded for consideration of that matter by the chancellor. *Highland* v. *Davis*, 119 W. Va. 501, 195 S. E. 604.

For the reasons thus set forth, we reverse the decree of the circuit court and remand the cause for further proceedings not at variance with this opinion.

*Reversed and remanded.*

Kenna, Judge, dissenting:

The United States Fidelity and Guaranty Company executed as surety the guardian fiduciary bond in a penalty of six thousand dollars on March 19, 1929. On March 25 the guardian deposited forty-two hundred, ten dollars and eighty-four cents in the Bank of Sutton, and on March 26 the guardian's check for four thousand dollars was deposited to Juergens' personal account and the Bank accepted Juergens' individual check for three thousand dollars. The check was credited upon his indebtedness to the Bank. Proof of claim filed with the Receiver, as well as the bill of complaint in this proceeding, contains allegations charging a criminal conspiracy between the guardian and the Bank of Sutton, the Bank, according to the accusation, having loaned Juergens individually five thousand dollars shortly before his appointment and qualification with the understanding that the indebtedness would be repaid out of fiduciary funds coming into his hands as guardian. At the time the alleged loan was made, Juergens was indebted to the Bank to the extent of approximately two thousand dollars, the five thousand dollar note representing a new loan of that amount. This transaction was negotiated in February, 1928, and it was not until the latter part of

March, 1929, that Juergens was appointed and qualified. It is to be supposed that at the time the loan was made the fiduciary post was filled by Juergens' predecessor, so that the proof of claim and the bill of complaint, both of which were verified, although based upon information and belief, could only have been conscientiously executed in utter ignorance of easily ascertainable information.

If a fiduciary execute a check payable to himself individually and deposit it in the drawee bank to his individual account, his doing so does not put the bank upon inquiry as to the legitimacy of the transaction. *Havana Cent. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720; *New Amsterdam Casualty Co.* v. *Robertson*, 129 Ore. 663, 278 Pac. 693, 64 A. L. R. 1396.

According to the overwhelming weight of authority, the bank may assume that the fiduciary estate is legally obligated to the fiduciary as an individual, and hence that the payment of the check by the bank as the fiduciary's debtor is required, the bank, without further cause, not being at liberty to suspect the motive of its depositor. If that be so, excepting instances where the bank is chargeable with knowledge imputing fraud, I do not understand why a bank cannot thereafter accept the individual check on the individual account of its depositor in payment to the bank of an individual indebtedness of the maker of the check. If the indebtedness was due to some third person, there is no doubt that the bank would be freed from all responsibility. *Havana Cent. R. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422, 92 N. E. 12, L. R. A. 1915B, 720; 3 Scott on Trusts 1744. See also *United States Fidelity & Guaranty Co.* v. *Bank*, 77 W. Va. 665, 88 S. E. 109. I realize that the bank receiving checks of its depositors in payment of an indebtedness due it occupies a dual position where its conduct should be very closely scrutinized, and anything approaching coercion impelling a fiduciary to discharge his individual indebtedness to the bank from fiduciary funds should not be tolerated. In this case, however, there is not one scintilla of such proof, nor any indication that the form of the transaction involving the payment of

two checks, instead of one, was to any degree a setup or makeshift with the hope by that means of legitimatizing the payment to the Bank.

I realize that there is a twilight or border zone in the reasoning of the cited cases. However, there is authority for the statement that a bank by accepting money known to be trust funds to be credited to the personal account of the trustee is not put upon inquiry, and is liable only if it becomes an actual participator in a resultant breach of trust. 4 Bogert on Trusts, paragraph 908.

This Court in *United States Fidelity & Guaranty* Co. v. *Bank,* 77 W. Va. 665, 88 S. E. 109, 111, cited in the majority opinion, used the following language quoted in the appellees' brief:

"In the other cases cited defendants were rendered liable on principles of equity and justice, for having of their own motion or by collusion with their depositor, appropriated the trust funds to the payment of some individual liability or indebtedness of the depositor to them. We are cited to no authority for holding a bank liable for a breach of trust by its depositor under any other circumstances. For aught a bank would know a check though payable to its depositor in some representative or fiduciary character, the money would belong absolutely to him, and represent money already paid out by him in discharge of his fiduciary liability; the bank cannot assume that money paid out on checks of a fiduciary is being misappropriated, and it has the right to assume that it is being properly appropriated, at least until it has actual notice to the contrary. To place the burden of supervising all such accounts upon a bank of deposit would be unreasonable, and one which few institutions, if any, would be willing to assume; indeed it would be unbearable, and to do so would in many cases deprive all fiduciaries of banking privileges, and work a detriment to estates and fiduciaries generally. So upon principles of equity and justice we cannot see that the bill presents a case for the relief of subrogation or substitution sought thereby, and our conclusion is that the decree should be affirmed."

. The statement of the learned author of "Scott on Trusts" classifies West Virginia as being among the jurisdictions not adhering to the rule sustained by what is referred to as the weight of authority to the effect that a bank is liable to the extent of trust funds deposited in a trustee's personal account in paying the depositor's liability to the bank. (See Scott on Trusts, Vol 3, 1748, paragraph 324.4.) An examination of the cases cited to sustain the text will disclose that none of them involves two accounts and two checks, as in this case.

The quoted utterance of this Court was in 1916. I have no doubt that both the proof of claim and the bill before us were drafted on the theory of conforming to the rule laid down in *United States Fidelity & Guaranty Co.* v. *Bank,* 77 W. Va. 665, 88 S. E. 109. A careful reading of that case and the two papers referred to I believe justifies that conclusion. It having totally failed to prove any *mala fides* on the part of the Bank, the complainant's case failed under the doctrine dealt with in the *Fidelity* case, and I do not believe that it should be permitted to shift its complaint so that, having done so, it is now entitled to recover on the theory that the Bank was put upon inquiry. The bank, although the debtor of its depositors, unquestionably occupies a confidential relationship toward them, and an unjustifiable inquisitiveness exercised by a bank is well known to be an unbearable liability. Neither do I believe a bank should be required to sift the information which reaches it according to the rules of evidence, distinguishing hearsay from factual information, and I fear that the majority opinion simply shifts the burden of proof and requires that a bank assume the initiative and eliminate all possibility of a fraudulent purpose rather than being obliged to wait until the known circumstances indicate its existence. I do not believe the Bank of Sutton was put upon inquiry so I would affirm the trial chancellor's decree.