[No. B014452. Second Dist., Div. Two. Sept. 13, 1985.]

HYMAN B. BEIZER, Plaintiff and Appellant, v.
FINANCIAL SAVINGS AND LOAN ASSOCIATION,
Defendant and Respondent.

COUNSEL

Albert A. Dorn for Plaintiff and Appellant.

Good, Wildman, Hegness & Walley and Ronald K. Brown, Jr., for Defendant and Respondent.

OPINION

GATES, J.—Proceeding under rule 62(a) of the California Rules of Court, on our motion we ordered this matter transferred when the Appellate Department of the Los Angeles Superior Court certified for publication a decision that suggested it was founded upon a record sufficient to permit an important and novel issue of law to be definitively resolved.

Some years ago this appellate department abandoned its former practice of first certifying its decisions to us for consideration prior to directing their publication. Thus deprived of (1) a statement of the question or questions believed to require resolution (Cal. Rules of Court, rule 63(e)) and (2) an opportunity to review the record that underlies these questions prior to deciding whether or not to order a transfer (Cal. Rules of Court, rule 64(b)), we frequently must base our initial decision largely upon guesswork.

However, since the instant case is before us, we shall attempt to speak to the potential issues inherent therein, even though it is now clear the appellant has overlooked the obligation imposed upon one who would challenge a trier of fact's decisions to perfect a record that demonstrates the existence of the errors alleged. (*In re Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65]; *Weiss* v. *Brentwood Sav. & Loan Assn.* (1970) 4 Cal.App.3d 738, 746 [84 Cal.Rptr. 736].)

■ While we have been presented with no record of the trial itself, so far as can be gleaned from the laconic settled statement and the patchwork collection of excerpted items that is before us, appellant Hyman Beizer, his wife and adult daughter, Lorraine Graham, on January 6, 1981, opened a joint tenancy "T-Bill Plus" account in the amount of $10,000 with respondent Financial Savings and Loan Association (Financial). In his deposition appellant asserted the funds deposited in this account had been derived from the Beizers' earnings and the joint tenancy form had been adopted because "My wife felt that if anything ever happened to both of us after our deaths our daughter would be able to have access to the account without the necessity of going through probate."

Appellant's wife died on February 16, 1981. Financial was not notified of her demise and on February 20, 1981, it surrendered to appellant's daughter the entirety of the account, even though she was not then in possession of the T-bill certificate.[1] Graham had told the branch office manager, Brenda Karst, that "her mother was sick in the hospital with her father by her bedside and that the funds within the . . . account were the only monies available to satisfy the costs of medical care which was desperately needed by her mother." After assuring herself of Graham's identity, Karst waived presentation of the certificate and authorized the withdrawal.

Appellant was advised of these events when he went to Financial "in connection with the account" on approximately March 1, 1981. A year later, on March 1, 1982, he filed the instant action for breach of contract.

As authorized by present sections 6800-6803 (formerly §§ 7602-7604) of the Financial Code,[2] the signature card signed by the three joint tenants

---

[1] Technically the record does not affirmatively establish that it was to Graham the funds were paid, but tacitly the parties accept the fact that it was she. Rather incredibly, from our record it appears neither side has ever made any truly determined effort to contact her over the ensuing years.

[2] Financial Code sections 6800-6803 provide as follows:

§ 6800: "When a savings account is maintained in any association or federal association in the names of two or more persons, whether minor or adult, in which the moneys in the account are payable to any of those persons or the survivor or survivors, the account and

permitted any one of them to direct Financial to make payments from the account, i.e., "Until notified to the contrary in writing signed by one or more of the signatories, Association is authorized to act as to such account in accordance with any writing bearing the signature of any one or more of signatories appearing on reverse; including, without limiting the generality of the foregoing, (1) the payment, delivery or transfer of all or any part of such account, or any rights relating thereto, at any time(s) to one or more of the signatories, or to any other person(s), and any such payment, transfer or delivery, or a receipt or acquittance signed by one or more of the signatories, shall be a valid release and discharge of Association; (2) the acceptance of a pledge of such savings account as security for a loan from Association to one or more of us. . . ." (See attachment A.)

The T-bill certificate itself set forth in five sections additional terms governing the account and, under the caption, "IMPORTANT INFORMATION REGARDING THIS SAVINGS ACCOUNT," contained, inter alia, the notation: "Withdrawals may be made only if this certificate accompanies the request." (See attachment B.)

---

all additions to it shall be the property of the persons as joint tenants with rights of survivorship."

§ 6801: "The moneys in a joint tenancy account may be paid to or on the order of any one of the joint tenants during their lifetimes or to or on the order of any one of the survivors of them after the death of any one or more of them, subject to the provisions of Section 14345 of the Revenue and Taxation Code. An association or federal association continues to have the power to change the tenancy of a joint tenancy account on the written instructions of any one of the joint tenants during their lifetimes or on the written instructions of any one of the survivors of them after the death of any one or more of them."

§ 6802: "The opening of a joint tenancy account shall be conclusive evidence in any action or proceeding to which either the association or federal association or the survivor or survivors is a party, of the intention of all the parties to the account to vest title to the account and the additions to it in the survivor or survivors."

§ 6803: "(a) By written instructions given to the association or federal association at the office where the account is maintained by all the parties to a joint tenancy account, the signatures of more than one of the joint tenants during their lifetimes or of more than one of the survivors after the death of any one of them may be required on any check, receipt, record change order, or withdrawal order, in which case the association or federal association shall pay the moneys in the account only in accordance with the instructions, but no instructions shall limit the right of the survivor or survivors to receive the moneys in the account. [¶] (b) Payment of all or any of the moneys in the account as provided in this article shall discharge the association or federal association from liability with respect to the moneys so paid, prior to receipt by the association or federal association of a written notice from any one of the joint tenants directing the association or federal association not to permit withdrawals in accordance with the terms of the account or the instructions. After receipt of the notice an association or federal association may refuse, without liability, to honor any check, receipt, or withdrawal order on the account pending determination of the rights of the parties. [¶] (c) Rights of the parties may be determined under subdivision (b) by any one of the following: [¶] (1) Decree by a court. [¶] (2) A written agreement signed by each of the joint tenants, setting forth their respective rights. [¶] (3) A written revocation of the notice made under subdivision (b), signed by the joint tenant that made it."

See also section 852 which makes similar provision for banks.

Appellant conceded he had not read any of the provisions of the certificate at the time the account was opened nor had he discussed any of its terms with the officers with whom he dealt. Furthermore, so far as revealed by our record, he never has explicitly stated when he first became aware of the informational language indicating the document itself should accompany any request for withdrawal. In a declaration in opposition to a motion for summary judgment, appellant merely alleged that at some undesignated point in time after the account was opened he had read the words printed thereon. Without further specification he declared:

"I regarded these provisions as part of the contract between myself and [Financial] and relied upon these contractual provisions in all of my dealings with [Financial]." He additionally asserted, "I was never informed by [Financial] or any of its agents, servants or employees that [it] would permit the funds in my Certificate account to be withdrawn without the presentation of the Certificate. If I had been so informed I would have had an opportunity to take steps to protect the account from being depleted, as happened in this case."

Obviously the trier of fact was not required to give full credit to such general conclusional assertions, particularly when their vagueness appears to have been carefully designed. In any event, appellant acknowledged that at no time had he instructed Financial, either orally or in writing, to restrict the other signatories' ability to withdraw or deposit funds in the account in accordance with the provisions of the signature card.

At trial Financial took the position that in the absence of any written instructions to the contrary, it was justified in releasing the funds to Graham under the clear terms of the signature card and the relevant provisions of the Financial Code, both of which formed a part of its contract with appellant. In addition, it asserted in both the points and authorities accompanying its motion for summary judgment and its brief filed in the appellate department, that the clause in the certificate referred to by appellant was merely a statement of its policy and not part of its contractual relationship with him, his wife and his daughter. This, it urged, was demonstrated by the fact that reference to the need to present the certificate when making withdrawals was "positioned below the signature line and conspicuously adjacent to the logo of FINANCIAL SAVINGS," while "[a]ll of the contractual provisions appear above the signature line."

Such a contention was certainly not an unreasonable one, particularly when it is noted that none of the other items of "IMPORTANT INFORMATION" set forth on the certificate could possibly have been construed as among

those contractual promises Financial made for the benefit of its depositors.[3] As a result, Financial argued, appellant did not have, and could not have had, any reasonable expectation that presentation of the certificate would be an absolute prerequisite to the withdrawal of funds.

In support of its position, Financial relied largely upon *Gray* v. *Landmark Union Trust Bank, etc.* (Fla.App. 1978) 364 So.2d 1256, 1257, wherein the court found that a statute similar to our Financial Code section 6803 was "clearly designed to protect a bank from liability to a depositor in situations where, as here, it pays funds from a joint account to a co-depositor." It concluded that "passbook presentation clauses are for the purpose of preventing payment to one who is not a depositor and may be waived by the bank. The clauses are not meant to protect a depositor against withdrawals by a co-depositor. To hold otherwise would place a heavy burden on a bank to mediate between co-depositors, and this is one of the burdens which the legislature sought to remove by enacting [the statute under review]." (*Id.*, pp. 1257-1258. See also *Paskas* v. *Illini Federal Sav. & Loan Ass'n* (1982) 109 Ill.App.3d 24 [440 N.E.2d 194, 197-198]; *Speasl* v. *National Bank of Decatur* (1962) 37 Ill.App.2d 384 [186 N.E.2d 84, 86-88]; *Forbes* v. *First Camden Nat. Bank & Trust Co.* (1953) 25 N.J.Super. 17 [95 A.2d 416, 418-419]; *Brooks* v. *Erie County Savings Bank* (1915) 169 App.Div. 73 [154 N.Y.Supp. 692, 693].)

Appellant, on the other hand, relied upon decisions which, in appropriate factual contexts, have held that a rule printed in a passbook which requires production of that book when money is withdrawn may constitute a part of the contract between a bank and its depositors which may not be unilaterally waived by the bank to the disadvantage of the account's several joint owners. (*Badders* v. *Peoples Trust Company* (1957) 236 Ind. 357 [140 N.E.2d 235, 62 A.L.R.2d 1103]; *Graves* v. *Red River Valley Bank* (La.App. 1984) 445 So.2d 122, 124-125; *Stillings* v. *Citizens Bank of Ava* (Mo.App. 1982) 637 S.W.2d 401, 404 [35 A.L.R.4th 1087]; *Welch* v. *North Hills Bank* (Mo.App. 1969) 442 S.W.2d 98, 103; *Keokuk Savings Bank & Trust Company* v. *Desvaux* (1966) 259 Iowa 387 [143 N.W.2d 296, 300-302]; *Griffin* v. *Centreville Savings Bank* (1961) 93 R.I. 47 [171 A.2d 204, 207-208]; *La Valley* v. *Pere Marquette Employes' Credit Union* (1955) 342 Mich. 639 [70 N.W.2d 798, 801-802]; *Davis* v. *Chittenden County Trust Co.* (1948)

---

[3]The other bits of "important information" were: "Please notify us immediately if this certificate is lost or stolen, if any of the persons named in this account become deceased or if there is any change in your mailing address. [¶] Items other than cash are subject to collection, and this Association reserves the right to charge the account with any items not collected or paid. Account holders assume full responsibility for currency and other items sent through the mail. . . . [¶] This certificate is transferable only on the books of the Association. [¶] This certificate should not be purchased or accepted as security for a loan without first verifying the balance thereof with the Association." (See attachment B.)

115 Vt. 349 [61 A.2d 553, 556]; *Mercantile Savings Bank* v. *Appler* (1926) 151 Md. 571 [135 A. 373, 375].)

Clearly, as one of these decisions points out, a statute which specifies that payment to one of the coowners of a joint account discharges a bank's obligation "does not prevent the bank by contract from enlarging its liability if it sees fit to do so. The rules of the bank voluntarily adopted by it become a valid agreement or contract between the bank and its depositors when an account is opened and the passbook is issued pursuant thereto with the printed rules set forth in the passbook. . . ." (*Badders* v. *Peoples Trust Company, supra,* 140 N.E.2d 235, 240. See also *Graves* v. *Red River Valley Bank, supra,* 445 So.2d 122, 124-125; *Welch* v. *North Hills Bank, supra,* 442 S.W.2d 98, 102-103.)

However, we do not regard these two lines of authority as necessarily conflicting; they certainly did not require an "either-or" approach in the present instance. As heretofore noted, *the contractual provisions of the subject account* are set forth on the signature card and in sections numbered one to five of the T-bill certificate. None of these provisions, either expressly or implicitly, required presentation of the certificate in order to effect a withdrawal. Moreover, as Financial urged, and the trial court apparently agreed, when the material designated as "IMPORTANT INFORMATION" is considered in context in its entirety, it is clear Financial did not intend these items to constitute commitments to its depositors. (See *Coristo* v. *Twin City Bank* (1975) 257 Ark. 554 [520 S.W.2d 218, 220-222].)

This conclusion, however, does not mean that in other cases certificates or passbooks containing different language or differently positioned terms, could not, with equal facility, sustain a contrary determination.[4] Still more importantly, even accepting that the instant certificate's presentation clause was merely reflective of Financial's general policy, and that it had been inserted solely for its benefit and protection, nonetheless, such fact would not permit it to cause a depositor to suffer a loss if its terminology was reasonably capable of, and did, lull him into a false sense of security that caused him to forbear taking protective action he otherwise would have adopted. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423]; Evid. Code, § 623. See also *La Valley* v. *Pere*

---

[4]It appears that even respondent Financial may have certain types of "Savings Accounts" whose passbooks or certificates make their presentation a "contractual" obligation. At least that expression was used in one of its "Policy and Procedure Guides," wherein it advises its personnel of the steps to be taken to determine an accountholder's identity before authorizing a withdrawal. (See attachment C.) This guide, of course, did not treat with the additional problems that arise when an account with such a "contractual" provision is taken in joint tenancy form.

*Marquette Employes' Credit Union, supra,* 70 N.W.2d 798, 800-801; *Davis* v. *Chittenden County Trust Co, supra,* 61 A.2d 553, 554-555; *Mercantile Savings Bank* v. *Appler, supra,* 135 A. 373, 375.)[5]

Consequently, if appellant's declaration claiming reliance had been less vague and conclusional it is possible even here his claims might have been credited by the trier of fact. If so, a judgment based thereon could have been sustained on appeal. Instead, however, appellant admitted he had given no consideration whatsoever to the certificate's presentation clause when this joint tenancy account was opened. His conclusional assertions, quoted *supra,* that at some undesignated later time he allegedly had relied thereon, without any specification as to date, circumstance or the reason why he had then had occasion to consider the matter, are, in our view, insufficient to establish, at least as a matter of law, that he was injured as the result of the wording of this particular T-bill certificate. Having failed to demonstrate that the trial court's implied determination rejecting his claim of equitable estoppel was erroneous, appellant's present attack on its decision cannot prevail. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 489; *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].)

The judgment is affirmed.

Compton, P. J., and Beach, J., concurred.

---

[5]In this respect we note it would appear that simply by utilizing language clearly indicating it was merely *reserving* the right to require that its certificates accompany any requests for withdrawal, a financial institution could protect its own legitimate interests and at the same time ensure its depositors would not be misled.

## ATTACHMENT A

**LEGAL OWNER — 613**

| U/ 294/10-1 | | | 13.9( | 6 | 209 10 8931 |

A945

SARAH I. BEIZER OR    FEB 20 1981

HYMAN BEIZER OR    *CLOSED*

LORRAINE ANN GRAHAM

8618 MC CONNELL AVENUE

LOS ANGELES    CA    90045

JANUARY 7 81    WALK    XXXXXXXX    a cc

*Sarah Beizer*    $ 9 730.57

*Hyman Beizer*    $ 9,000.00 Ck# 1329

*Lorraine Ann Graham*    $ 730.57 CASH

**GENERAL PROVISIONS**

We hereby apply for a savings account in FINANCIAL SAVINGS AND LOAN ASSOCIATION as JOINT TENANTS with the right of survivorship, and for issuance of evidence thereof in the approved form.

Until notified to the contrary in writing signed by one or more of the signatories, Association is authorized to act as to such account in accordance with any writing bearing the signature of any one or more of signatories appearing on reverse; including, without limiting the generality of the foregoing, (1) the payment, delivery or transfer of all or any part of such account, or any rights relating thereto, at any time(s) to one or more of the signatories, or to any other person(s), and any such payment, transfer or delivery, or a receipt or acquittance signed by one or more of the signatories, shall be a valid release and discharge of Association; (2) the acceptance of a pledge of such savings account as security for a loan from Association to one or more of us. Association is authorized to supply any needed endorsement on any check or instrument tendered for credit to such account.

ATTACHMENT B

# T-BILL PLUS CERTIFICATE·

FINANCIAL SAVINGS AND LOAN ASSOCIATION

CULVER CITY, CALIFORNIA 90230
INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA "JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON"

**1. Account Summary Section**

Accountholder SARAH BEIZER OR HYMAN BEIZER OR LORRAINE ANN GRAHAM AS JOINT TENANTS

Date of Issuance 01-06-81

Opening Balance $ 10,000.00          Initial Maturity Date 07-07-81

Rate of Earnings 13.661 % per annum   Renewal Term: See Section 4

No Compounding                        Minimum Balance Requirement
                                      $ 10,000.00

Earnings Distribution Dates
Beginning JANUARY 31, 1981      and      MONTHLY--MAIL
thereafter, with the last distribution on the final maturity date.

**2. General Section**
This certifies that the Accountholder holds a savings account with the Opening Balance and for the initial term expiring on the Initial Maturity Date shown hereon in the above named Association.

**3. Earnings Section**
This account shall receive earnings at the Rate of Earnings as above set forth  Such earnings shall be payable on the Earnings Distribution Dates above set forth, provided the balance in the account is not reduced below the Minimum Balance Requirement  If such balance is reduced below the Minimum Balance Requirement, the Rate of Earnings on the remaining balance shall thereafter be reduced to the rate then paid on regular savings accounts (see also Section 5).

**4. Renewal Section**
This account shall be automatically renewed for an additional 26 weeks at the close of business on the Initial Maturity Date or on the maturity date of any Renewal Term unless (1) it is withdrawn within the 7-day period referred to in Section 5 hereof, or (2) at least 10 days prior to any maturity date, the association gives written notice to the Accountholder that this account will not be renewed  In such latter event, the account will be converted to a regular savings account and receive earnings at the rate then paid on regular savings accounts
 The rate of earnings for any Renewal Term shall be at the maximum rate authorized for 26-week certificate accounts by Bank Board regulations then in effect and in accordance with the Depository Institutions Deregulation Committee.

**5. Penalty Clause Section**
Except as otherwise provided herein, in the event of any withdrawal of principal from this account prior to a maturity date, the Accountholder shall forfeit an amount equal to 3 months

(Continued on last page)

(Front)

(90 days)earnings whether earned or not, on the amount withdrawn at the nominal (simple interest) rate being paid on the account, regardless of the length of time the funds withdrawn have remained in the account

Any withdrawal which reduces the account balance below the Minimum Balance Requirement, or any change in the term or Rate of Earnings, shall be considered as a withdrawal of the entire account balance and shall be subject to the penalty prescribed herein

Earnings credited to the account during any term may be withdrawn at any time during such term without penalty If the account is renewed at the same earnings rate, earnings during the preceding term as well as the current term may be withdrawn at any time without penalty during the Renewal Term. If the Renewal Term rate is different, earnings in the account at the commencement of the Renewal Term shall be deemed merged with the principal and only earnings for the Renewal Term may be withdrawn at any time without penalty during such term.

If the account or any portion thereof is withdrawn not more than 7 days after a maturity date, earnings shall be paid thereon at the Rate of Earnings above set forth to the date of withdrawal without reduction for any penalty.

To the extent necessary to comply with these requirements, reductions shall be made from the amount withdrawn or the remaining account balance.

Payment received for this certificate the ___7___ day of ___JANUARY___, 19 _81_.

Issued at ___9801 WASHINGTON BLVD CULVER CITY___, California
FINANCIAL SAVINGS AND LOAN ASSOCIATION

*Brenda Hurst*

AUTHORIZED SIGNATURE

## IMPORTANT INFORMATION
## REGARDING THIS SAVINGS ACCOUNT

**Please notify us immediately if this certificate is lost or stolen, if any of the persons named in this account become deceased or if there is any change in your mailing address.**

Items other than cash are subject to collection, and this Association reserves the right to charge the account with any items not collected or paid Account holders assume full responsibility for currency and other items sent through the mail.

Withdrawals may be made only if this certificate accompanies the request.

This certificate is transferable only on the books of the Association.

This certificate should not be purchased or accepted as security for a loan without first verifying the balance thereof with the Association.

MEMBER OF THE FEDERAL HOME LOAN BANK SYSTEM
WITH ACCOUNTS INSURED TO $100 000 BY THE
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION

This Association is a Subsidiary
of Financial Federation, Inc.

We are a subsidiary of
**FINANCIAL
FEDERATION
INC**

SIGN OF STRENGTH

FF-S-90 (7/80)

(Back)

ATTACHMENT C

| FINANCIAL Policy and FEDERATION Procedure Guide INC F B F B | Guide Number 75-310 |
| --- | --- |
| | Page 1 of 1 |

| Subject: | Effective Date June 1, 1971 |
| --- | --- |
| Savings | Supersedes |
| Transactions on Savings Accounts | Issued by: Joyce Moberly |
| Transactions Without Certificate | Approved by: Richard M. DeSmet |

Occasionally a saver may want to make an addition or withdrawal without presenting his certificate. Certain precautions should be observed.

Additions

A customer may make an addition to his account without his passbook. The teller should post the addition on a temporary receipt and advise customer to bring his certificate to the association for up-dating.

Additions may be made to an account by someone other than the accountholder and without presenting the passbook.

In these cases the temporary receipt should reflect only the addition and not the balance in the account. This receipt should be given to the person making the addition.

A complete temporary receipt reflecting both the addition and the balance should be mailed to the accountholder.

Withdrawals Without Certificate

Provisions of the contract stipulate that the certificate must be presented at the time a withdrawal is requested and under ordinary circumstances we adhere to this policy. However, from time to time unusual circumstances will demand that we waive this policy in order to avoid creating a hardship for the customer.

If the accountholder is known to you and needs to make a withdrawal without his certificate, he should sign the waiver (exhibit A) in addition to the withdrawal slip.

Any withdrawal made without the certificate must be approved by the Manager or Savings Officer. If the customer is not known to the association personnel, he should be asked to furnish adequate identification and supply some pertinent information about the account that will verify his ownership. (Amount of last deposit, approximate balance, etc.)