443 S.E.2d 213

Patricia L. PETERS, Plaintiff–Petitioner,

v.

Nanette PETERS, Executrix of the Estate of John Lewis Peters, deceased, as such Executrix, and Nanette Peters, in her individual right, Don Randall Peters, John Michael Peters, and the Whitesville State Bank, a corporation, Defendants–Respondents.

No. 21896.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1994.

Decided March 24, 1994.

Dissenting Opinion of Justice Miller April 20, 1994.

Peter A. Hendricks, Madison, for plaintiff-petitioner.

Francis M. Curnutte III, Smith, Curnutte & Hostler, Charleston, for defendants-respondents.

NEELY, Justice:

This appeal resulted from a suit brought by Patricia L. Peters ("Patricia") who alleged that the Whitesville State Bank ("the Bank") improperly paid out to the decedent John Lewis Peters ("John"), Patricia's late husband, the proceeds of certain bank accounts held jointly by Patricia and John. On cross motions for summary judgment, the Circuit Court of Boone County, relying on *W.Va. Code* 31A–4–33 [1993], awarded judgment to the Bank, holding that the Bank was not liable to Patricia as a matter of law under the facts and circumstances presented. Patricia's appeal followed.

The undisputed facts relevant to this appeal are as follows: Patricia and John were married on 2 April 1973. They lived together in Boone County until 7 March 1989 when John died testate. Patricia and John had no children; John was survived by Nanette Peters, Don Randall Peters and John Michael Peters, his children from a previous marriage, and his widow Patricia.

On 17 April 1978, Patricia and John established joint checking and passbook savings accounts at the Bank. Each of these accounts was in the form of a joint tenancy with a right of survivorship. In connection with the establishment of the joint savings account, the Bank issued John and Patricia a passbook in the names of John L. or Patricia

Peters to be used in making withdrawals from their account. Printed in the passbook were the rules and regulations governing the relation between the depositors and the Bank. At the beginning of the regulations appears the following:

"NO PAYMENTS WILL BE MADE EXCEPT UPON PRESENTATION OF THIS BOOK."

Rules Number 5 and 7, also printed in the passbook, are pertinent for our purposes:

5. Deposits and the interest thereon may be withdrawn by the depositor in person or by written order; but in either case, the passbook must be presented, so that such payments may be entered therein.

7. In all cases, a payment upon presentation of the deposit shall be a discharge to the bank for the amount so paid.

Both John and Patricia contributed funds in unknown proportions to the accounts, and both from time to time withdrew funds from the accounts.

During the course of their marriage, the parties purchased from the Bank two certificates of deposit ("CDs"), each in the initial principal face amount of $10,000 and each of which was held in the form of a joint tenancy with right of survivorship. The CDs were made payable to John L. Peters or Patricia Peters; each certificate was negotiable; each matured certificate was payable at a determined future time; and each certificate provided that it was "payable on its return properly endorsed." Each of the certificates bears on its face the following:

This bank is prohibited by Federal Law from paying this deposit in whole or in part before maturity and from paying interest after maturity.

As the CDs matured, they were renewed as provided for in the certificates. At no time did the Bank act as a trustee for either Patricia or John or undertake to manage the affairs or act in a fiduciary capacity for either or both of the parties.

In June 1984, John, claiming that he had lost his passbook and certificates, withdrew funds in the checking account and the savings account; he also redeemed the two CDs then current, one of which had not yet matured and was thus subject to an early withdrawal penalty, to wit, a forfeiture of three months' interest in the amount of $456.30. Notwithstanding the aforementioned rules printed in the passbook and on the certificates, the Bank allowed John to withdraw the funds on deposit in both accounts without presentation of either the passbook or the certificates.

In September 1984, Patricia presented the CDs then current to the Bank and asked that the CDs be renewed. The Bank refused to do so, apprising her of her husband's withdrawal of the funds on deposit represented by the CDs. At no time before the presentation of the CDs by Patricia had the Bank alerted her to her husband's withdrawal of the funds.

On 3 April 1989, Patricia filed suit against Nanette Peters, Don Randall Peters, John Michael Peters[1] and the Bank on the grounds that John's actions were unlawful and that the Bank had acted unlawfully in permitting the withdrawal of funds and the cashing of the CDs. In her complaint, Patricia requested that the court require the Bank to reimburse her in the amount of $20,000 plus interest from the date it permitted John to liquidate the two certificates in question. In its answer, the Bank asserted that Patricia's complaint failed to state a claim upon which relief could be granted and that the Bank had acted lawfully and properly within the confines of its contractual relationship with John and Patricia.

On 3 May 1992, the court granted the Bank summary judgment, ruling that *W.Va. Code* 31A–4–33 [1993] relieved the Bank of liability to Patricia because the Bank had paid the funds to Patricia's co-depositor. We think the court was correct in so holding.

## I.

■ In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of*

---

1. Because the fundamental issues on appeal involve the lawfulness of the payment of the account proceeds by the Bank to John, for present purposes any issues relating to the liability (if any) of the decedent's children are not relevant to this appeal.

*New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), we established the standard to be employed in determining whether summary judgment is proper:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*See also Massey v. Jim Crockett Promotions, Inc.,* 184 W.Va. 441, 400 S.E.2d 876 (1990); *Stemple v. Dobson,* 184 W.Va. 317, 400 S.E.2d 561 (1990); *Shell v. Metropolitan Life Ins. Co.,* 183 W.Va. 407, 396 S.E.2d 174 (1990). Summary judgment is not proper "unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. at 171, 133 S.E.2d at 777. (Citations omitted). With this standard in mind, we turn to the errors assigned by Patricia on appeal.

## II.

■ Patricia argues that the lower court erred as a matter of law or otherwise abused its discretion in granting the Bank summary judgment by disposing all issues in reliance upon *W.Va.Code* 31A–4–33 [1993]. *W.Va. Code* 31A–4–33 [1993], otherwise known as the West Virginia Banking Statute, provides in pertinent part:

> (b) When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such person, upon the making thereof, shall become the property of such persons as joint tenants. All such deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them.
>
> (c) Payment to any joint depositor and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all pay-

ments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof. Prior to the receipt of such notice no banking institution shall be liable for the payment of such sums.

As the lower court found, the statute is designed to protect a bank from liability to a depositor in situations where, as here, it in good faith pays funds from a joint account to a co-depositor. *See DeLong v. Farmers Building & Loan Association of West Virginia,* 148 W.Va. 625, 137 S.E.2d 11, 16 (1964).

According to Patricia, the Bank rules requiring presentment of the passbook and certificates before money was permitted to be withdrawn from the accounts waived the protection otherwise afforded under *W.Va.Code* 31A–4–33 [1993]. In support of this contention, she cites *Badders v. Peoples Trust Co.,* 236 Ind. 357, 140 N.E.2d 235 (1957) for the proposition that a clause requiring presentation of a passbook makes a bank liable to a depositor for payments made to a co-depositor for the passbook even when there is a statute which otherwise relieves the bank of liability for payments to a co-depositor.

■ We do not follow *Badders,* however, because, in our judgment, passbook presentation clauses are for the purpose of preventing payment to one who is not a depositor and may be waived by the bank. The clauses are not meant to protect a depositor against withdrawals by a co-depositor. To hold otherwise would place a heavy burden on a bank to mediate between co-depositors, one of the burdens which the legislature obviously sought to remove by enacting *W.Va.Code* 31A–4–33 [1993].

Furthermore, depositors often lose or mislay passbooks and CDs. If we accede to Patricia's argument, then banks will be required to put depositors to endless hassle when passbooks or CDs are lost or mislaid. In the case before us both the bank and the community in which it is located are very small and the depositors are typically well-known to all bank employees, circumstances that persist throughout rural West Virginia

and redound to the incalculable benefit of the ordinary consumer of bank services.[2]

### III.

■ In support of her contention that summary judgment was improper, Patricia also argues that the Bank was negligent in permitting John to withdraw funds from the accounts without making reasonable and adequate inquiries into his failure to produce the passbook and certificates as well as in failing to notify the other joint depositor of the withdrawals.

Patricia relies on *Zuplkoff v. Charleston National Bank*, 77 W.Va. 621, 88 S.E. 116 (1916) for the proposition that under suspicious circumstances a bank has the duty to exercise due care to determine that the person to whom payment is being made is entitled to receive it and, if necessary to make this determination, to make reasonable inquiries. *Zuplkoff*, however, is distinguishable from this case. In *Zuplkoff*, a person obtained possession of the owner's passbook without the owner's knowledge and, presenting the passbook to the bank, withdrew funds from the owner's account. The owner claimed that the Bank was negligent in failing to inquire adequately as to whether the passbook was really his.

■ This case, in contrast, involves joint owners of accounts. Although the imposition of a duty that an affidavit be taken from all owners concerning any actions taken in regard to an account or certificate by another joint owner arguably might provide depositors with more security, there exists no West Virginia law requiring a bank to inquire of or inform one joint depositor about the action of another joint depositor. As stated above, the purpose of *W.Va.Code* 31A–4–33 [1993], which allows any joint depositor to withdraw funds from any joint account, is to relieve a financial institution from just such meddling. Thus, the statute allows a financial institution to pay any joint depositor all funds without any duty to ascertain the contribution of the individual joint owners to the account.

Furthermore, unlike *Zuplkoff*, where the impostor was a stranger to the bank, the Bank in this case had no reason to suspect any wrongdoing when John withdrew the funds from the accounts. *See Brooks v. Erie County Savings Bank*, 169 A.D. 73, 154 N.Y.S. 692, 693 (1915). The evidence showed that: (1) John and Patricia had been customers of the Bank for many years and (2) Bank personnel were well-acquainted with the Peters; (3) Bank personnel knew that John and Patricia held several joint accounts; and (4) the Peters frequently withdrew funds from their various joint accounts separately. Given this course of dealing, there were no circumstances tending to show that the Bank had knowledge or notice sufficient to put it on inquiry that John was not entitled to withdraw funds. We think the circuit court was correct in finding no question of fact was presented as to the Bank's negligence.

### IV.

■ We also agree with the circuit court's rejection of Patricia's breach of contract claim. Specifically, Patricia argues that the Bank entered into a contractual arrangement with her assuring her that presentment of passbooks and certificates of deposits were required before payments from joint accounts would be made. According to Patricia, by allowing John to withdraw the full value of the accounts without presentation of the passbook and to redeem the CDs before maturity without production of the certificates themselves, the Bank violated its contract with Patricia.

■ Clearly, as stated in *Badders, supra*, a statute which specifies that payment to one of the co-owners of a joint account discharges a bank's obligation does not prevent the bank by contract from enlarging its liability if it sees fit to do so. The rules of a bank voluntarily adopted by it become a valid agreement or contract between the bank and its depositors when an account is opened and the passbook is issued or a CD purchased

**2.** Indeed, this judge has never had a personal bank account in the City of Charleston because he refuses to do business with a bank where he is not known personally by every employee of the institution. Unfortunately, the recent bank mergers and buy-outs are tending to destroy personal banking much to the detriment of civilization. *Sic transit gloria mundi.*

pursuant to the printed rules set forth in the passbook or the certificates. *Zuplkoff, supra.*

It has also been held, however, that mere boilerplate recitals of the obligation to present passbooks or surrender endorsed certificates at the time of withdrawal constitute nothing more than general statements of bank policy and as such create no substantive rights in depositors. *See Beizer v. Financial Savings & Loan Association,* 172 Cal.App.3d 133, 218 Cal.Rptr. 143 (1985). Thus, when the terms relating to the requirement of presentation of a passbook or certificate are positioned or articulated in such a way as to make it evident that a Bank does not intend the terms to be binding, no contract exists as to those terms. *Id.; Coristo v. Twin City Bank,* 257 Ark. 554, 520 S.W.2d 218 (1975); *Pulliam v. Pulliam,* 738 S.W.2d 846 (Ky. App.1987).

In this case, it is clear that the Bank did not intend the clauses in the passbook to constitute commitments to its depositors. As the court in *Coristo v. Twin City Bank, supra* explained, treatment of passbooks has undergone a change in banking: before bank statements were rendered to depositors, the passbook was the only record of the account. Now, according to Robert Milam, president of the Bank, although the requirement of presentment of the passbook is the standard rule, withdrawal without the passbook is possible and allowable, so long as the passbook was presented at least once every six months to be updated.

V.

■ Finally, Patricia claims that the Bank is liable to her for wrongfully assisting in a breach of fiduciary duty by Mr. Peters. Under Patricia's theory, the Bank, as fiduciary to Patricia and John, was obligated to make inquiries before paying out funds in the absence of passbook or certificate presentment. We disagree.

■ Where there is a general deposit of money in a bank, the title to and beneficial ownership of the money is vested in the bank, and the relation between it and the depositor is that of debtor and creditor.

*Southern Elec. Supply Co. v. Raleigh County National Bank,* 173 W.Va. 780, 320 S.E.2d 515 (1984). A deposit creates an ordinary debt, and not a privilege or right of a fiduciary character. *United States Fidelity & Guaranty Co. v. Home Bank,* 77 W.Va. 665, 88 S.E. 109 (1916). Likewise, a certificate of deposit creates the relation of debtor and creditor between a bank and the certificate holders. *Finance Corporation v. Bank,* 99 W.Va. 230, 128 S.E. 294 (1925).

The cases cited by Patricia, to wit, *United States Fidelity & Guaranty Co. v. Home Bank,* 77 W.Va. 665, 88 S.E. 109 (1916) and *United States Fidelity & Guaranty Co. v. Hood,* 122 W.Va. 157, 7 S.E.2d 872 (1940) fail to support her contention that the Bank owed her a fiduciary duty which it breached in permitting John to withdraw the funds. These cases involved guardianship and estate administrator accounts which by their nature are fiduciary accounts.

■ Although a bank may incur liability for its participation in a fiduciary's diversion of trust funds, this type of liability is predicated on three elements. First, the account must consist of trust funds. Second, the bank must have some knowledge of the trust character of the deposited funds. Third, the bank must have knowledge of the contemplated fraud or diversion and it must assist or participate in the diversion for its own benefit. *See United States Fidelity & Guaranty Co. v. Hood,* 122 W.Va. 157, 7 S.E.2d 872 (1940). None of these elements is present in this case. The funds at issue here were not trust funds at all; they were merely jointly deposited funds held in an "or" type account by a husband and wife, a practice so common to married couples that it could never constitute notice to a bank of a fiduciary or trust character.

Furthermore, Patricia's theory that the Bank breached its fiduciary duty to her in paying out the funds without first making inquiries of her as joint depositor flies in the face of *W.Va.Code* 31A–4–33 [1993] which specifically provides that a bank need not make such inquiries but instead is free to pay out funds to either party to joint "or" type account. As stated above, *W.Va.Code* 31A–4–33 [1993] is designed to protect banks from

the burdens that would be imposed upon them by a rule such as the one advanced by Patricia: under such a rule, banks would be required to make inquiries of every husband or wife whose co-depositor was withdrawing funds from a joint "or" type account. Recognizing the enormous economic costs such a rule would impose, the legislature quite fittingly alleviated these burdens by establishing a bright-line test—written notice—for determining when a bank is on notice that it should not permit withdrawal of funds by a joint depositor. *See W.Va.Code* 31A–4–33(c) [1993]. In short, the statute makes clear that a bank has no duty of inquiry when paying funds to joint depositors, at least in the absence of written notice to the contrary.

We would note that we are not unsympathetic to Patricia's sense of betrayal in this situation. However, we do not believe the Bank breached any duties to her or any contract. The bank obviously had a duty to exercise good faith and use ordinary care in the handling of these certificates of deposit. There being no evidence that the Bank breached this standard, we do not believe the Bank is liable to Patricia for her own loss of ownership interest in the accounts and the CDs. Patricia was betrayed by John, not by the bank. The bank was merely trying to be helpful and accommodating, and while the general rule these days is that no good deed will go unpunished, we choose to make an exception in this case.

Accordingly, for the foregoing reasons, we find that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law. Therefore, the judgment of the Circuit Court of Boone County is affirmed.

Affirmed.

MILLER, Justice, dissenting:

The majority expresses regret at the plight of Mrs. Patricia L. Peters who found out before her husband's death that he had taken all the funds from their joint account and given them to his children from his first marriage. Rather than obtain the majority's condolences, I am sure that Mrs. Peters wished it was more attentive to the law.

With regard to the joint passbook savings account,[1] the majority recognizes that the Whitesville State Bank (Bank), by its own regulations, had language that required presentation of a passbook before savings account money could be withdrawn.[2] The majority brushes aside these promises by holding that W.Va.Code, 31A–4–33(c) (1993),[3] allows payment to any joint depositor to be sufficient to release the bank. It cites *De-Long v. Farmers Building & Loan Association,* 148 W.Va. 625, 137 S.E.2d 11 (1964), for this premise. However, it is clear that *De-Long* dealt with the savings and loan statute found in W.Va.Code, 31–6–8 (1945), and not our banking statute. Contrary to the majority's view, *DeLong* made this critical distinction: "It is evident from the foregoing provision [W.Va.Code, 31–6–8] that the building and loan association statute, unlike the banking statute, was enacted primarily for the purpose of protecting such associations with

1. The majority appears to consider the certificates of deposit as being in the same category as the passbook savings account. The certificates are not the same as the passbook savings account because there was no language requiring the presentment of the certificates in order for a joint owner to cash them in.

2. Immediately above its Rules and Regulations Governing Savings Deposits, the passbook contains this language which is emphasized by capital letters: "NO PAYMENTS WILL BE MADE EXCEPT UPON PRESENTMENT OF THIS BOOK." Article 5 of its Rules and Regulations states: "Deposits and the interest thereon may be withdrawn by the depositor in person or by written order; but, in either case, the passbook must be presented, so that such payments may be entered therein." Also, Article 7 states: "In all cases, a payment upon presentation of a deposit book shall be a discharge to the bank for the amount so paid."

3. Although this action arose prior to the 1993 amendment to W.Va.Code, 33A–4–33, the language in the prior version is substantially similar to that in the 1993 amendment. W.Va.Code, 31A–4–33(c) (1993), states:

"Payment to any joint depositor and the receipt or the acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof. Prior to the receipt of such notice no banking institution shall be liable for the payment of such sums."

respect to any payment made by them upon any such accounts." 148 W.Va. at 632, 137 S.E.2d at 16. Even if we assume that the release language in W.Va.Code, 31A–4–33(c), is designed to absolve the bank for payment to a joint owner, this language does not affect or control the passbook language requiring its presentation.

The critical issue is whether the Bank by its own regulations created an obligation with its savings account depositors that supersedes the exculpatory language of W.Va. Code, 31A–4–33(c). The majority rejects the Indiana court's holding in *Badders v. Peoples Trust Co.,* 236 Ind. 357, 140 N.E.2d 235 (1957), which held that such passbook language does create a contractual duty superseding statutory language:

> "As to appellee bank's contention that the bank was relieved from liability under the statute as to joint accounts previously set out herein providing:
>
> > '... such deposit ... may be paid [by the bank] to either of such persons ..., and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to such bank or trust company for any payment so paid.'
>
> [T]he statute does not prevent the bank by contract from enlarging its liability if it sees fit to do so. The rules of the bank voluntarily adopted by it become a valid agreement or contract between the bank and its depositors when an account is opened and the passbook is issued pursuant thereto with the printed rules set forth in the passbook." 236 Ind. at 365, 140 N.E.2d at 240. (Footnote and paragraph numbers omitted).

Indiana is not alone in this view. The Missouri court in *Welch v. North Hills Bank,* 442 S.W.2d 98 (Mo.Ct.App.1969), dealt with a similar situation where one owner of a joint account withdrew funds without the passbook. Missouri had a statute similar to W.Va.Code, 31A–4–33(c), allowing payment to one joint depositor to release the bank.[4] The bank asserted that the statute exonerated it, but the court rejected this view:

"As heretofore indicated, this statute does not purport to govern the contract which the bank can make with its depositors. It does not by its terms or by implication prohibit the bank from making a contract with provisions different from the statute. We must therefore decide this case on the basis of the contract entered into by the parties." 442 S.W.2d at 102.

The court in *Welch* found that the bank's regulations formed a contract between it and the two depositors on the joint savings account which could not be waived by two of the three parties:

> "Each one of the three parties had a right to rely thereon and a right to hold the other parties to compliance therewith. Two of the parties to a three-party contract cannot waive the rights of the third party under the contract. It is clear from the evidence that plaintiff did not waive any rights that she had. In this instance, the bank patently failed to comply with the provisions of its rules and regulations which required the presentation of the pass book in order for a depositor to be entitled to make a withdrawal from the savings deposits in question." 442 S.W.2d at 103.

*See also Keokuk Savings Bank & Trust Co. v. Desvaux,* 259 Iowa 387, 143 N.W.2d 296 (1966); *Graves v. Red River Valley Bank,* 445 So.2d 122 (La.Ct.App.), *cert. denied,* 446 So.2d 320 (1984); *La Valley v. Pere Marquette Employes' Credit Union,* 342 Mich. 639, 70 N.W.2d 798 (1955); *Stillings v. Citizens Bank of Ava,* 637 S.W.2d 401 (Mo.Ct. App.1982); *Griffin v. Centreville Sav. Bank,* 93 R.I. 47, 171 A.2d 204 (1961); *Davis v. Chittenden County Trust Co.,* 115 Vt. 349, 61 A.2d 553 (1948). *See generally* Annot., 35 A.L.R.4th 1094 (1985).

While the majority cites *Beizer v. Financial Savings & Loan Association,* 172 Cal. App.3d 133, 218 Cal.Rptr. 143 (1985), I do not find that it supports the majority's position. First, *Beizer* recognized:

> "[A] statute which specifies that payment to one of the coowners of a joint account

---

**4.** The court in *Welch* quoted its statute, Mo.Ann. Stat. § 362.470 (Vernon 1959), which contained, in part, this language: " '[S]uch payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit[.]' " 442 S.W.2d at 102.

discharges a bank's obligation 'does not prevent the bank by contract from enlarging its liability if it sees fit to do so. The rules of the bank voluntarily adopted by it become a valid agreement or contract between the bank and its depositors when an account is opened and the passbook is issued pursuant thereto with the printed rules set forth in the passbook....' (*Badders v. Peoples Trust Company, supra,* [236 Ind. 357, 365, 140 N.E.2d 235, 240 (1957) ] )." 172 Cal.App.3d at 139, 218 Cal. Rptr. at 146. (Other citations omitted).

The key point in *Beizer* was that the language relating to presentment of a T-bill certificate in order to withdraw from it was found not to be a part of the contractual language. Consequently, there was no contract requiring presentation of the certificate in order to obtain a withdrawal:

> "As heretofore noted, *the contractual provisions of the subject account* are set forth on the signature card and in sections numbered one to five of the T-bill certificate. None of these provisions, either expressly or implicitly, required presentation of the certificate in order to effect a withdrawal." 172 Cal.App.3d at 139, 218 Cal.Rptr. at 147. (Emphasis in original).

However, *Beizer* closed with this admonition: "This conclusion, however, does not mean that in other cases certificates or passbooks containing different language or differently positioned terms, could not, with equal facility, sustain a contrary determination." 172 Cal.App.3d at 139, 218 Cal.Rptr. at 147. (Footnote omitted).

Much the same result was reached in *Coristo v. Twin City Bank,* 257 Ark. 554, 520 S.W.2d 218 (1975), which the majority cites. There, the court found that "there is no requirement in these 'terms' that the passbook must be presented when a withdrawal was made[.]" 257 Ark. at 559, 520 S.W.2d at 221. Another case cited by the majority, *Pulliam v. Pulliam,* 738 S.W.2d 846 (Ky.Ct. App.1987), came to a similar conclusion. The court found there was no language that required a presentation before a withdrawal of funds.

In this case, however, it is clear from the language of Articles 5 and 7 of the Bank's Rules and Regulations that presentment of the passbook was required.[5] Obviously, a bank could avoid this problem by not adopting a rule requiring presentment of the passbook. However, one reason behind the presentment of the passbook is to ensure the joint owner is authorized to withdraw. Many older persons will place a younger relative's name on a joint savings account and keep the passbook in their exclusive possession. By doing so, the older person is able to determine when the relative should have the passbook for a permitted withdrawal.

The majority either ignores or misreads the foregoing cases. It astounds me how the majority can establish the law that it has in Syllabus Points 2, 3, and 4. While the writer of the majority laments in note 2 the demise of local banks, it is apparent to me that he now creates law which exonerates a bank from a written promise it has made to its depositors.[6]

**5.** *See* note 2, *supra.*

**6.** Note 2 of the majority concludes with: *"Sic transit gloria mundi."* I would respond with: *Si a jure discedas, vagus eris, et erunt omnia omni-* *bus incerta.* ("If you depart from the law, you will go astray, and all things will be uncertain to everybody.") *Black's Law Dictionary* 1380 (6th ed. 1990).